IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

GREGORY L. REYES, et al.,

    Defendants.

No. C 06-00556 CRB

**MEMORANDUM AND ORDER RE: MOTIONS TO DISMISS**

In August of 2006, a grand jury returned an indictment against Defendants for their participation in an alleged scheme to backdate stock options at Brocade Communications Systems, Inc. ("Brocade"). Now pending before the Court are three motions filed by Defendant Gregory L. Reyes ("Reyes"). All three motions seek dismissal of the indictment, either in whole or in part. For the reasons set forth below, all three motions are DENIED.

## I. Multiplicity

The first motion seeks dismissal of Count Two--or alternatively, Counts Five, Six, and Seven--due to "multiplicity" in the indictment. Reyes contends that these two sets of counts in the indictment improperly subject him to multiple convictions for a single offense.

"The test for multiplicity is whether each count 'requires proof of an additional fact which the other does not.'" United States v. Garlick, 240 F.3d 789, 794 (9th Cir. 2001) (quoting Blockburger v. United States, 284 U.S. 299, 304 (1932)). Thus, in reviewing the

counts of an indictment for "multiplicity," a court "should look to the elements of the offenses alone, rather than the way they are charged in the indictment." United States v. Nash, 115 F.3d 1431, 1437 (9th Cir. 1997).

Here, the Court concludes that there is no "multiplicity" between Count Two, which charges securities fraud, and Counts Four, Five, and Six, which set forth false filings charges. The first crime, securities fraud, requires proof of a connection to the purchase or sale of stock, as well as detrimental reliance on the misrepresentation, while the second crime does not require either of these things. See Simpson v. AOL Time Warner Inc., 452 F.3d 1040, 1047 (9th Cir. 2006). Meanwhile, the second crime, false filings, requires proof of a false statement in a document submitted to the SEC, while the first crime does not. See 15 U.S.C. § 78ff(a). In short, each of the two crimes charged by the government--fraud and false filings--has an element that the other does not. Thus, even though the same underlying course of conduct may well give rise to two separate charges, there is no "multiplicity" problem here.

Although there is apparently no controlling authority that has reached this conclusion in the context of securities charges, other district courts have rejected the very same multiplicity argument now presented by Reyes. United States v. Ferguson, 478 F.Supp.2d 220, 234 (D. Conn. 2007). Further, the Court's conclusion is consistent with other decisions, including Supreme Court and Ninth Circuit decisions, permitting punishment for "fraud" and "material misstatements" in the other contexts, such as banking or immigration. United States v. Woodward, 469 U.S. 105, 108-09 (1985) (holding that a defendant could receive concurrent sentences, one for making fraudulent statements to immigration authorities under 18 U.S.C. § 1001, and another for wilfully failing to disclose the importation of foreign currency under 18 U.S.C. § 1058, even though an immigrant's failure to disclose the existence of nearly $10,000 of foreign currency in his boot was the basis for both convictions); Nash, 115 F.3d at 1437-38 (affirming two convictions--one for making false bank filings under 18 U.S.C. § 1044, and another for bank fraud under 18 U.S.C. § 1344-- even though the defendant's submission of the same misleading loan application served as

the basis for both convictions). Reyes' motion to dismiss counts of the indictment due to "multiplicity" is DENIED.

## II. Rule 13b2-2

Counts Nine through Twelve allege that Reyes made materially false and misleading statements to Brocade's auditors, in violation of 17 C.F.R. § 240.13b2-2 ("Rule 13b2-2"). Reyes notes that the conduct underlying two of these counts--Counts Nine and Ten--occurred prior to the passage of the Sarbanes-Oxley Act of 2002. He argues that the SEC lacked authority to promulgate Rule 13b2-2 until the passage of Sarbanes-Oxley, and he contends that these counts must dismissed because they rest upon an invalid rule.

The thrust of Reyes argument is that the SEC exceeded its authority in passing Rule 13b2-2. He notes that Congress explicitly declined to pass a proposed statutory provision identical to Rule 13b2-2 that was originally included in the Foreign Corrupt Practices Act of 1979. Reyes further notes that Congress passed a provision similar to Rule 13b2-2 in the Sarbanes-Oxley Act of 2002. Because Congress deliberately declined to pass a truth-in-accounting provision in 1979 and then affirmatively passed one in 2002, Reyes contends that, in passing a rule where Congress had deliberately refused to legislate, the SEC exceeded its regulatory authority.

The Court is unpersuaded. Reyes' argument ignores legislative history indicating that Congress omitted the original provision from the Foreign Corrupt Practices Act of 1979 "because the SEC had already published for comment rules designed to accomplish similar objectives under its existing authority." H.R. Conf. Rep. No. 95-831, at 10 (1977), reprinted in 1977 U.S.C.C.A.N. 4120, 4123. In other words, part of the reason that Congress decided not to act was that the SEC had already done so. Further, the legislators who omitted that original statutory provision explicitly stated that, as a result of the omission, "no inference should be drawn with respect to any rulemaking authority the SEC may or may not have under the securities laws." Id. In other words, the legislators explicitly stated that they did not want courts to draw precisely the inference that Reyes now suggests.

//

3

Nor is Reyes' argument about the invalidity of Rule 13b2-2 supported by the fact that Congress eventual decided to pass the Sarbanes-Oxley Act in 2002. That statute, which includes a provision prohibiting insiders from taking "any action to fraudulently influence, coerce, manipulate, or mislead any independent public or certified accountant engaged in the performance of an audit," 15 U.S.C. § 7242, goes far beyond the SEC's rule, which prohibits directors and officers from *making* or *causing to be made* a materially false or misleading statement to an accountant, 17 C.F.R. § 240.13b2-2. Thus, far from demonstrating that the SEC had previously exceeded its authority, the eventual passage of Sarbanes-Oxley suggests, if anything, only that Congress believed the SEC had not gone far enough in its rulemaking, not that it believed the SEC was without authority to act in the first place.

Congress has explicitly granted the SEC authority to issue "such rules and regulations as may be necessary or appropriate to implement" the securities laws. 15 U.S.C. § 78w(a). This Court cannot declare a rule promulgated by the SEC pursuant to that authority invalid unless it is "arbitrary, capricious or manifestly contrary to" the statute. Dreiling v. American Exp. Co., 458 F.3d 942, 949 (9th Cir. 2006) (quoting Chevron U.S.A., Inc. v. Natural Res. Def. Council, 467 U.S. 837, 844 (1984)). Given the legislative history described above, the Court cannot conclude that the SEC's decision to promulgate Rule 13b2-2 was "arbitrary, capricious or manifestly contrary to" the securities laws enforced by the agency pursuant to 15 U.S.C. § 78w(a). Id. Accordingly, Reyes' motion to dismiss Counts Nine and Ten is DENIED.

### III. Ambiguity in APB 25

Reyes' third and final motion attacks the validity of the entire indictment, which is based on the government's contention that, by engaging in a scheme to backdate stock options, Defendants misrepresented the compensation expenses that Brocade was required to disclose under Accounting Board Principles Opinion No. 25 ("APB 25"). Reyes claims that APB 25 is so fundamentally vague and ambiguous that a violation of it cannot form the basis for a legitimate criminal prosecution.

//

4

The Court's view is that APB 25 is not so ambiguous or unclear. The goal of APB 25 is straightforward: it requires companies to record the "intrinsic value" of an option at the time it is granted. In other words, if an in-the-money option is granted, then APB 25 requires a company to record as compensation the amount by which the market price exceeds the strike price.

Determining exactly *how* to record that expense, however, might under certain circumstances raise complicated questions. To provide guidance on this subject, APB 25 defines a "measurement date" as follows:

> The *measurement date* for determining compensation cost in stock option, purchase, and award plans, is the first on which are known both (1) the number of shares that an individual employee is entitled to receive and (2) the option or purchase prices, if any. That date for many or most plans is the date an option or purchase right is granted or stock is awarded to an individual employee . . . . However, the measurement date may be later than the date of grant or award in plans with variable terms that depend on events after date of grant or award.

APB 25 ¶ 10(b). Yet even with this guidance, the precise timing of a grant is not always easy to discern. When an employee receives a stock option in connection with a new job, reasonable minds could conceivably disagree about whether the value of the stock option should be calculated based on the date of the interview, or the offer, or the acceptance, or another event. Indeed, as Reyes notes, accountants have often disagreed about the proper application of APB 25, and many companies apparently have applied the rule incorrectly.

Reyes argues that APB 25 is so fundamentally fuzzy in telling companies how to determine the "measurement date" that it violates the Due Process Clause for the government to bring criminal charges based on alleged understatement of expenses under the rule. Cf. United States v. Dahlstrom, 713 F.2d 1423, 1429 (9th Cir. 1983) (reversing criminal convictions for tax fraud where "the legality of the tax shelter program advocated by the appellants in this case was completely unsettled by any clearly relevant precedent on the dates alleged in the indictment"); see also Grayned v. City of Rockford, 408 U.S. 104, 108 (1972) ("It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined.").

5

1    The Court disagrees that APB 25 is so opaque. It is possible that APB 25 may
2 provide inadequate guidance under some circumstances about how to record compensation
3 expenses for stock options. But simply because the rule may be unclear in *some* respects
4 does not mean it is unclear in *all* respects. It is impossible to square the deliberate retroactive
5 pricing of stock options with the plain text of APB 25, which instructs companies that the
6 proper measurement date is the "first" date on which the grantor knows "the number of
7 shares" and "the option or purchase prices." To hold otherwise would permit companies to
8 avoid recording compensation expenses as of the "first" date on which the value of the option
9 was actually known, but instead to record compensation as of the date on which the grantor
10 *wished* he had first made the grant. Whatever ambiguity may exist in APB 25, it is not
11 possible to construe the rule's language as permitting the deliberate retroactive selection of a
12 particular grant date and the intentional concealment of the date on which that retroactive
13 selection was made. If APB 25 precludes *anything*, it prohibits companies from deliberately
14 choosing a strike price based on a favorable historical date and then, even under
15 circumstances where the intrinsic value of the grant is clear, pretending that the option was
16 granted earlier than it actually was.

17    The Court does not view this case as one where subsequent regulations have made
18 criminal behavior that previously was arguably outside the scope of criminal punishment, or
19 of uncertain import. See United States v. Kim, 184 F.Supp.2d 1006, (N.D.Cal. 2002)
20 (Breyer, J.). In Kim, the marginal nature of the allegedly criminal conduct was apparent on
21 the face of the charging instrument. By contrast, in this case the indictment describes a
22 pattern of conduct that would place Defendants well beyond the margins of putative
23 compliance with APB 25, notwithstanding whatever fuzziness there may be around its edges.

24    It may well turn out that Defendants believed they were complying with the
25 requirements of APB 25 and simply misunderstood what those requirements were. It also
26 may be true that APB 25 provided insufficient guidance for Defendants to have determined
27 with any confidence what the proper "measurement date" was for particular options issued
28 by Brocade, or even for all of those options, due to the particular circumstances under which

6

they were issued. But none of these possibilities are capable of determination "without a trial of the general issue." Fed. R. Civ. P. 12(b); see also United States v. Jensen, 93 F.3d 667, 669 (9th Cir.1996). If the evidence compels the conclusion--or, more accurately, if the evidence presented at trial would not allow a jury to find beyond a reasonable doubt--that Defendants received adequate guidance from APB 25 and acted with the requisite state of mind in failing to comply with it, then Reyes may renew his attack upon the government's case based on the insufficiency of the prosecution's evidence. See Fed. R. Crim. P. 29.

**IT IS SO ORDERED.**

Dated: May 30, 2007

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE