RICHARD MARMARO (Bar No. 91387)
rmarmaro@skadden.com
JACK P. DICANIO (Bar No. 138782)
jdicanio@skadden.com
RYAN H. WEINSTEIN (Bar No. 240405)
rweinste@skadden.com
SKADDEN ARPS SLATE MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, California 90071-3144
Tel: (213) 687-5000
Fax: (213) 687-5600

CHRISTOPHER J. GUNTHER (admitted *Pro Hac Vice*)
cgunther@skadden.com
SKADDEN ARPS SLATE MEAGHER & FLOM LLP
4 Times Square
New York, New York 10036
Tel: (212) 735-3000
Fax: (212) 735-2000

Attorneys for Defendant Gregory L. Reyes

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>GREGORY L. REYES,<br><br>Defendant. | CASE NO. CR 06 0556 CRB<br><br>**DEFENDANT GREGORY L. REYES'S SUPPLEMENTAL DISCLOSURE RELATED TO DAVID A. GULLEY'S CONTENT ANALYSIS**<br><br>Judge: Hon. Charles R. Breyer<br>Courtroom: 8, 19th Floor |

Defendant Gregory L. Reyes, through undersigned counsel, supplements his Summary of Expert Testimony with additional information related to Dr. David A. Gulley's content analysis of Brocade analyst reports.

**I. <u>Dr. Gulley's Content Analysis of Brocade Analyst Reports</u>**

As disclosed in Mr. Reyes's Summary of Expert Testimony (the "Summary"), Dr. Gulley has undertaken a content analysis of published analyst reports to assess the importance of non-cash stock option compensation expense to market professionals making buy or sell recommendations to Brocade investors. *See* Summary at 1 ("Dr. Gulley may explain that the content of analyst reports covering Brocade over the relevant period demonstrates that professional market analysts largely ignored non-cash stock-based compensation. As part of this opinion, Dr. Gulley may explain the results of his content analysis of analyst reports published over the relevant period."). Indeed, as disclosed in Dr. Gulley's declaration and at deposition in the related SEC matter, this content analysis is an important basis for Dr. Gulley's opinion. *See* "My Scope of Work," Gulley Decl. ¶ 10 ("I related share price to potential explanatory variables including overall market and industry share price performance, Brocade's disclosures, and the *views and recommendations of stock market analysts covering the company*"); Gulley Dep. 206:16-18 ("Yeah, I consider analyst reports to be an important basis for my opinion actually.")

In general, researchers use content analyses to assess the relative importance of a given topic by measuring the frequency and prominence of that topic in relevant communications. The more important a topic is, the more likely it will appear in published works. Content analysis is an accepted scientific method in social science research, and has frequently been applied to study information presented in analyst reports. *See, e.g.*, Gaetan Breton and Richard J. Taffler, "Accounting Information and Analyst Stock Recommendation Decisions: A Content Analysis Approach," *Accounting and Business Research*, Vol. 31, No. 2; Gary John Previts, Robert J.Bricker, Thomas R. Robinson, and Stephen J. Young, "A Content Analysis of Sell-Side Financial Analyst Company Reports," *Accounting Horizons*, Vol. 8 No. 2, June 1994; and Rodney K Rodgers and Julia Grant, "Content

Analysis of Information Cited in Reports of Sell-Side Financial Analysts," *Journal of Financial Statement Analysis*, Fall 1997, Vol. 3 Issue 1.

The specific methodology Dr. Gulley employed in conducting his content analysis was disclosed in materials produced in the related SEC matter. As these documents explain, Dr. Gulley analyzed a "stratified" sample of 118 analyst reports. To construct the sample, Dr. Gulley drew from the universe of analyst reports covering Brocade between May 1999 and the second quarter of 2005. Dr. Gulley then stratified the sample by time period and analyst "influence." This ensured an adequate sample size from quarter to quarter and a representative sample of "superstar" and "non-superstar" investment analysts, as designated by *Institutional Investor* magazine. Dr. Gulley and his team then defined the semantic classifications used to measure the frequency and prominence of specific types of information. The classifications were provided to a team of trained reviewers, who undertook the initial coding of each paragraph contained within the 118 analyst reports. A single decision maker then rendered the final classification judgments, and Dr. Gulley reviewed all judgments to ensure consistency. Finally, all of the classifications were tabulated and analyzed.

## II. Results of Dr. Gulley's Content Analysis

Dr. Gulley found that, for the period prior to 2005, references to non-cash stock-based compensation expense appeared in less than 1.6% of analysts' commentary on Brocade's financial performance and investment value. (More generally, all references to deferred compensation appeared in only about 2% of the discussion.) The vast majority of references to stock-option expense appeared as entries in dense financial tables that were not subject to further commentary by the analysts. These results and others were disclosed in documents produced to the government in the related SEC case. *See, e.g.,* REYES-SEC00018749-899.

Additionally, in analyzing reports issued in January 2005, Dr. Gulley found that analysts conveyed little concern regarding Brocade's non-cash stock option expenses.

## III. Expected Testimony Based on Dr. Gulley's Content Analysis

Based on these analyses, Dr. Gulley may opine that, throughout the study period, analysts presented their work in a manner entirely consistent with the notion that investors did not deem stock

option expenses important to their investment decisions. *See* Summary at 1. To illustrate his opinion, Dr. Gulley may reference language from specific analyst reports issued after Brocade's restatement. For example, Dr. Gulley may note the following:

1. Baird "maintain[ed] our Neutral rating on BRCD following delay of FY04 10K and disclosure of accounting errors. . . . Restatement related to accounting for stock options versus revenue or operating expense adjustments. We initially believe this is more of an accounting housekeeping matter versus a negative reflection on fundamental business issues. Revenue or expense recognition issues would cause us more concern. Internal review is ongoing. Although this issue appears minor, we will feel more comfortable once the 10-K is formally filed."

2. Merrill Lynch continued its "buy" recommendation and explained in part: "[W]e are not changing our estimates, since the company expects no material adjustments to its non-GAAP revenues or expenses. We believe that Brocade's business fundamentals remain intact for now. While we are somewhat concerned that the ongoing review could reveal additional mistakes, we are encouraged that the company is cleaning house internally and not at the behest of the SEC. There is a chance that Brocade will file the 10-K within 15 days of its due date . . . . If Brocade does not file within 15 days of the due date, the company may then file within one or two months of the due date, although this is also not certain." The report further explained under Analysis that: "

3. Adams Harkness continued its "strong buy" recommendation, explaining in part: "The restatement should not affect any pro-forma earnings, should not affect cash, should not affect fiscal 2004 (ended October 2004), and has no effect on the business fundamentals. However, the company will delay its 10k (due January 13) to incorporate the restatements. Although we expect the stock to be weak on the delayed 10K, we continue to believe the company's fundamentals are strong and getting stronger, and that the valuation is attractive."

Similarly, in reports published on January 24 and 25, 2007 (after Brocade's restated financial results were announced), Dr. Gulley may observe that:

1. Citigroup Smith Barney maintained its "Buy/Speculative Risk" rating and explained in part: "Revenue, non-GAAP EPS, and cash balances were not affected. Importantly, with the audit now closed, share pressure due to concern that broader issues would be uncovered will likely ease."

2. Adams Harkness reiterated its "Strong Buy" rating and explained in part: "With the review completed and the 10K filing close at hand, we believe an overhang of investor concern has been removed, and the stock should react positively."

Dr. Gulley may further opine that the analyst reports offer "external validation" for his econometric analysis. In particular, Dr. Gulley may show how various analyst reports focus on financial measures that his model found to influence Brocade's share price, as opposed to statistically insignificant measures such as non-cash stock option compensation expense. For example, consistent his econometric outputs, Dr. Gulley may opine that Brocade's revenue was among the most ubiquitous topics within the analyst coverage. Dr. Gulley may opine that this and similar findings further support the conclusion that investor concern lied not with stock option compensation expenses but with financial measures that actually affected Brocade's value.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

DATED: July 20, 2007

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Richard Marmaro
Christopher J. Gunther (admitted *Pro Hac Vice*)
Jack P. DiCanio
Ryan H. Weinstein

By: /s/ Richard Marmaro
RICHARD MARMARO
Attorneys for Defendant
GREGORY L. REYES