COOLEY GODWARD KRONISH LLP
STEPHEN C. NEAL (170085)
(nealsc@cooley.com)
SCOTT D. DEVEREAUX (146050)
(devereauxsd@cooley.com)
NEAL J. STEPHENS (152071)
(nstephens@cooley.com)
KATHLEEN H. GOODHART (165659)
(kgoodhart@cooley.com)
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Telephone: (650) 843-5000
Facsimile: (650) 857-0663

Attorneys for Defendant
GREGORY L. REYES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>GREGORY L. REYES,<br><br>  Defendant. | Case No. CR06-00556 CRB<br><br>**DEFENDANT GREGORY L. REYES'S MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO RULE 29(c)**<br><br>Date: April 28, 2010<br>Time: 2:00 p.m.<br>Dept.: Courtroom 8, 19th Floor<br>Judge: Hon. Charles R. Breyer<br><br>Trial Date: February 22, 2010 |

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

DEF.'S MOTION FOR JUDGMENT OF ACQUITTAL
CR06-00556 CRB

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT on April 28, 2010, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Charles R. Breyer, located at 450 Golden Gate Ave., San Francisco, California 94102, Defendant Gregory L. Reyes will, and hereby does, respectfully move this Court to enter a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29.

Mr. Reyes's motion is based on this notice, the attached memorandum of points and authorities, the pleadings and papers previously filed, the evidence presented in this case, the arguments of counsel, and such other matters as the Court may deem it proper to consider.

Dated:   April 9, 2010                                COOLEY GODWARD KRONISH LLP


                                                      */s/ Stephen C. Neal*
                                                      STEPHEN C. NEAL

                                                      Attorneys For Defendant
                                                      GREGORY L. REYES

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ..................................................................................................... 1

II. SUMMARY OF ARGUMENT ................................................................................ 1

III. ARGUMENT ............................................................................................................ 3

    A. Standard for Judgment of Acquittal Under Rule 29(c) ............................... 3

    B. The Government Failed to Introduce Evidence Sufficient to Support a Finding that Mr. Reyes Acted with the Requisite Criminal Intent. ........................ 4

        1. Lacking evidence that Brocade's Finance Department and Audit Committee were unaware of options backdating, the government failed to prove that Mr. Reyes acted willfully and with the intent to defraud Brocade's shareholders. ............................................. 5

        2. Mr. Reyes could not have acted knowingly if he did not understand that Brocade's options practices would have accounting implications under APB 25. ....................................................... 8

    C. Without Proving that Brocade's Finance Department and Audit Committee Were Unaware of Backdating, the Government's Evidence Does Not Establish that Mr. Reyes Caused the False Statements. .......................................... 11

    D. The Government Failed to Produce Evidence Sufficient To Support a Finding That Any Alleged False Statement or Omission Was Material to a Reasonable Brocade Investor. ..................................................... 12

IV. CONCLUSION ....................................................................................................... 15

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

i.

**DEF.'S MOTION FOR JUDGMENT OF ACQUITTAL**
**CR06-00556 CRB**

# TABLE OF AUTHORITIES

**PAGE**

**CASES**

*Basic, Inc. v. Levinson*,
    485 U.S. 224 (1988) .................................................................................................... 12, 13

*City of Westland Police & Fire Ret. Sys. v. Sonic Solutions*,
    2009 WL 942182 (N.D. Cal. Apr. 6, 2009) ............................................................................ 9

*Greenhouse v. MCG Capital Corp.*,
    392 F.3d 650 (4th Cir. 2004) ............................................................................................... 14

*Livid Holdings, Ltd. v. Salomon Smith Barney, Inc.*,
    416 F.3d 940 (9th Cir. 2005) ............................................................................................... 12

*SEC v. Reyes*,
    491 F. Supp. 2d 906 (N.D. Cal. 2007) ................................................................................. 14

*United States v. Cassese*,
    290 F. Supp. 2d 443 (S.D.N.Y. 2003) ................................................................................... 3

*United States v. Cruz*,
    554 F.3d 840 (9th Cir. 2009) ................................................................................................. 1

*United States v. Manarite*,
    44 F.3d 1407 (9th Cir. 1995) ................................................................................................. 3

*United States v. Martinez*,
    54 F.3d 1040 (2d Cir. 1995) .................................................................................................. 4

*United States v. Navarro Viayra*,
    365 F.3d 790 (9th Cir. 2004) ................................................................................................. 1

*United States v. Nevils*,
    --- F. 3d ---, No. 06-50485, 2010 WL 986790 (9th Cir. Mar. 19, 2010) (en banc) .................. 3

*United States v. Reyes*,
    577 F.3d 1069 (9th Cir. 2009) ........................................................................................... 7, 9

*United States v. Tarallo*,
    380 F.3d 1174 (9th Cir. 2004) .......................................................................................... 4, 10

*Weiss v. Amkor Tech., Inc.*,
    527 F. Supp. 2d 938 (D. Ariz. 2007) ................................................................................... 10

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

ii.

**DEF.'S MOTION FOR JUDGMENT OF ACQUITTAL**
**CR06-00556 CRB**

# TABLE OF AUTHORITIES
## (CONTINUED)

**PAGE**

**STATUTES**

15 U.S.C. § 78ff ........................................................................................................................... 4

15 U.S.C. §§ 78j(b) ..................................................................................................................... 4

15 U.S.C. §§ 78m(b)(2)(A) ......................................................................................................... 4

15 U.S.C. § 78m(b)(5) ................................................................................................................. 4

17 C.F.R. § 240.10b-5 ................................................................................................................. 4

17 C.F.R. § 240.13b2-1 ............................................................................................................... 4

17 C.F.R. § 240.13b2-2 ............................................................................................................... 4

**OTHER AUTHORITIES**

Charles Alan Wright & Peter J. Henning,
    FEDERAL PRACTICE AND PROCEDURE § 466 (4th ed. 2009) ....................................................... 1

Federal Rule of Criminal Procedure 29(c) .................................................................................. 3

NINTH CIRCUIT MANUAL OF MODEL CRIMINAL JURY INSTRUCTIONS, 5.6 (2003) ........................... 4

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

iii.

**DEF.'S MOTION FOR JUDGMENT OF ACQUITTAL**
**CR06-00556 CRB**

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Pursuant to Federal Rule of Criminal Procedure 29(c), Defendant Gregory L. Reyes respectfully renews his motion for entry of judgment of acquittal, previously filed on March 11, 2010 (Dkt. No. 1122) and denied on March 19, 2010 (Reporter's Transcript ("RT"), Vol. 15 (Mar. 19, 2010) at 2781:15–17).  Mr. Reyes's initial Rule 29 motion, submitted at the close of the government's case-in-chief, sought acquittal on each of the ten counts charged in the indictment filed on August 11, 2006 (Dkt. No. 23).  On March 26, 2010, after four days of deliberations, the jury found Mr. Reyes not guilty on Count One charging conspiracy to commit securities fraud and guilty on the nine remaining counts: one count of securities fraud in connection with Brocade stock (Count Two); three counts of securities fraud based on false SEC filings (Counts Five, Six, and Seven); one count of falsifying books, records, and accounts of Brocade (Count Eight); and four counts of making false statements to an accountant of Brocade (Counts Nine, Ten, Eleven, and Twelve).  Mr. Reyes respectfully submits that the government failed as a matter of law to introduce sufficient evidence to sustain a conviction on any of the nine counts on which the jury returned a guilty verdict.

**II.   SUMMARY OF ARGUMENT**

A judgment of acquittal is warranted here because the government failed to introduce evidence sufficient to prove beyond a reasonable doubt the elements of intent, knowledge, willfulness, and materiality.[1]  Although the government dedicated much of its case to proving the undisputed bookend facts that (a) "backdating happened" and (b) Brocade's financial statements during the relevant period did not comply with APB 25, it failed to establish the elements of its

---

[1] By this motion, Mr. Reyes moves generally for a judgment of acquittal on the grounds that the government has failed to introduce evidence sufficient to sustain a conviction on any of the nine counts of conviction.  A Rule 29 motion for acquittal need not set forth the specific grounds for judgment because "'the very nature of such motions is to question the sufficiency of the evidence to support a conviction.'" *United States v. Cruz*, 554 F.3d 840, 844 n.4 (9th Cir. 2009) (quoting *United States v. Navarro Viayra*, 365 F.3d 790, 793 (9th Cir. 2004) (internal citations omitted)); *see also* 2A Charles Alan Wright & Peter J. Henning, FEDERAL PRACTICE AND PROCEDURE § 466 (4th ed. 2009) ("Specificity is not required by Rule 29 . . . .").  By discussing specific elements of the government's case for which the lack of sufficient evidence is particularly glaring, Mr. Reyes does not waive his argument that the government has generally failed to meet its burden on any of the nine counts of conviction.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

1.

**DEF.'S MOTION FOR JUDGMENT OF ACQUITTAL**
**CR06-00556 CRB**

case beyond a reasonable doubt. The government's theory of intent relied on evidence of Mr. Reyes's statements to Craig Martin, Neil Miotto, and June Weaver, as well as a series of hearsay statements by Stephanie Jensen relating to a "conspiracy" that the jury found did not exist. Individually or collectively, this evidence cannot overcome the dispositive role of Brocade's Finance Department and Audit Committee—the accounting professionals responsible for ensuring that Brocade's books and records, SEC filings, and representations to auditors were in accordance with APB 25.

The evidence was uncontroverted that Brocade's Finance Department (as well as the Board of Directors' Audit Committee) bore responsibility for stock-options accounting, and the government failed to prove beyond a reasonable doubt that the senior Finance Department executives or members of the Audit Committee were unaware of backdating. In fact, the government disclaimed the relevance of this issue in closing and conceded it had not established that the gatekeepers of Brocade's financial statements were deceived or coerced.[2] As a result, there is no evidence to support any inference but that the Finance Department knew of the company's backdating and concluded that no expense charge was required under APB 25. Given this intervening link between Mr. Reyes and the false statements, the government could not have established that Mr. Reyes acted with criminal intent or "caused" the false statements unless he somehow prevented Finance from complying with APB 25; but again, there is insufficient evidence to conclude that Mr. Reyes deceived or affirmative directed Finance or the Audit Committee to report inaccurately the company's financial statements.

Foreclosed by the Ninth Circuit's opinion from arguing that "Finance didn't know," the prosecution encouraged the jury to find that Mr. Reyes acted with criminal intent and actually caused the falsifications despite the evidence that Finance and the Audit Committee were aware of backdating and determined that no compensation charge was required. By failing to connect

---

[2] *See* RT, Vol. 16 (Mar. 22, 2010) at 3016:2–8 ("The defense has insisted that these e-mails show that [CFO] Mike Byrd knew about the backdating at Brocade. Okay. But what Mike Byrd knew and did not know about the backdating scheme does not help you answer the real question of what Mr. Reyes knew . . . . Nor is what Mike Byrd knew particularly relevant."); *id.* at 3045:1–4 ("[Y]ou really do not have a solid record to divine what the board at Brocade did and did not know. And what the board members did and did not know does not help you answer the real question of what Mr. Reyes knew . . . .").

these two points—"backdating happened" and non-compliance with APB 25—through criminal intent *and* causation, the government proved—at most—that Brocade did not account for its non-cash option expenses in a manner consistent with APB 25.

A separate and independent basis for acquittal is the insufficiency of the evidence on the element of materiality. In contrast to the 2007 trial, the government called two witnesses who actually invested in Brocade. But the testimony by these investor witnesses actually weakened the government's proof on materiality: neither witness testified that they had ever read a 10-K, much less considered Brocade's disclosures of option expenses under APB 25 or FAS 123. Even when the testimony by the investor witnesses is viewed collectively with the testimony by Carol Bowie and Robert McCormick—the "proxy witnesses" who never made a single decision relating to the purchase or sale of Brocade stock—the evidence failed to establish that the alleged omission of a non-cash APB 25 compensation expense was material to a reasonable investor.

## III. ARGUMENT

### A. Standard for Judgment of Acquittal Under Rule 29(c)

Rule 29(c)(1) of the Federal Rules of Criminal Procedure provides that "[a] defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." As the Ninth Circuit has explained, the trial court's task under Rule 29 is to view the evidence in the light most favorable to the prosecution and evaluate whether a rational juror could have found that the essential elements of the charges were proved beyond a reasonable doubt. *United States v. Manarite*, 44 F.3d 1407, 1411 (9th Cir. 1995); *see also United States v. Nevils*, --- F. 3d ---, No. 06-50485, 2010 WL 986790, at \*3 (9th Cir. Mar. 19, 2010) (en banc). The court must reverse the verdict "if the evidence of innocence, or lack of evidence of guilt, is such that all rational fact finders would have to conclude that the evidence of guilt fails to establish every element of the crime beyond a reasonable doubt." *Nevils*, 2010 WL 986790, at \*4. While inferences may be drawn in the government's favor, the court "must also be satisfied that the inferences are sufficiently supported to permit a rational juror to find that the element . . . is beyond a reasonable doubt." *United States*

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

3.

DEF.'S MOTION FOR JUDGMENT OF ACQUITTAL
CR06-00556 CRB

*v. Cassese*, 290 F. Supp. 2d 443, 448 (S.D.N.Y. 2003) (citing *United States v. Martinez*, 54 F.3d 1040, 1043 (2d Cir. 1995)).

### B. The Government Failed to Introduce Evidence Sufficient to Support a Finding that Mr. Reyes Acted with the Requisite Criminal Intent.

To support a conviction on any of the nine counts for which the jury returned a guilty verdict, the government had to prove beyond a reasonable doubt that Mr. Reyes acted with fraudulent intent. Collectively, in Counts Two and Five through Twelve, the government was required to prove that Mr. Reyes acted "knowingly and willfully" to: (a) perpetrate a scheme to defraud Brocade investors; (b) make false or misleading statements or omissions in SEC filings and to Brocade's accountants; and (c) falsify books, records, and accounts of Brocade. (*See generally* Jury Instructions, Dkt. No. 1158.) A judgment of acquittal is required because the evidence failed to support a jury finding beyond a reasonable doubt that Mr. Reyes acted with the mental state required for each of these counts.

In the context of securities fraud, to convict Mr. Reyes of Counts Two, Five, Six, or Seven, the government was required to prove that Mr. Reyes acted for the purpose of defrauding buyers and sellers of Brocade stock. *See* 15 U.S.C. §§ 78j(b) and 78ff; 17 C.F.R. § 240.10b-5; *United States v. Tarallo*, 380 F.3d 1174, 1181 (9th Cir. 2004) ("If [the defendant] did not even know that the statements were false, of course, he could not have had the specific intent to defraud.").[3]

On each of the nine counts of conviction, the government was also required to prove that Mr. Reyes acted "knowingly"—that is, that Mr. Reyes was aware of the alleged falsifications in Brocade's books and records, Audit Representation Letters, and SEC filings, and did not falsify through ignorance, mistake, or accident. *See* NINTH CIRCUIT MANUAL OF MODEL CRIMINAL JURY INSTRUCTIONS, 5.6 (2003).

---

[3] A conviction for making a false statement to an accountant requires the same level of intent—*i.e.*, an intent to mislead a Brocade accountant or auditor by making a false statement or omission. 17 C.F.R. § 240.13b2-2; 15 U.S.C. § 78ff. A books-and-records violation, as charged in Count Eight under 15 U.S.C. §§ 78m(b)(2)(A), 78m(b)(5), & 78ff; 17 C.F.R. § 240.13b2-1, similarly requires a showing that Mr. Reyes falsified a book, record, or account of Brocade, and, in doing so, acted knowingly and with the intent and for the purpose of falsifying that book, record, or account. (Jury Instructions at 27.)

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

4.

**DEF.'S MOTION FOR JUDGMENT OF ACQUITTAL**
**CR06-00556 CRB**

Finally, to meet the additional burden of proving willfulness on each count, the government was required to prove—at a minimum—that Mr. Reyes acted with an understanding that his conduct was wrongful. (Jury Instructions, Dkt. No. 1158 at 22 (Count Two), 25 (Counts Five, Six, Seven), 27 (Count Eight), & 31 (Counts Nine, Ten, Eleven, Twelve).)

> **1.  Lacking evidence that Brocade's Finance Department and Audit Committee were unaware of options backdating, the government failed to prove that Mr. Reyes acted willfully and with the intent to defraud Brocade's shareholders.**

As the defense previewed in its opening statement and argued in closing, the government's principal failing was its inability to prove that Mr. Reyes undertook any action knowingly and willfully intending to defraud anyone.[4] The government's case on intent relied on evidence of Mr. Reyes's statements to Craig Martin that he did not engage in backdating and understood the accounting implications of backdating during his tenure as CEO,[5] as well as Mr. Reyes's purported statement to June Weaver that "it's not illegal if you don't get caught."[6] This theory of intent improperly assumes that even if Brocade's accounting experts were aware of backdating, Mr. Reyes is criminally responsible for the company's non-compliance with APB 25. In fact, the government's own witnesses established that the professionals responsible for ensuring that Brocade's financial statements complied with APB 25—on whom a CEO may properly rely to ensure the accuracy of the company's financials—knew of the company's options-pricing practices.[7] For example, the most obvious indication that the Audit Committee

---

[4] RT, Vol. 3 (Feb. 22, 2010) at 283:6–9; RT, Vol. 16 at 2974:15–22, 2975:6–8, 2975:12–14, & 2975:19–2976:10.

[5] RT, Vol. 13 (Mar. 10, 2010) at 2548:3–2550:2, 2643:2–2645:9, 2652:24–2653:3; *id.* at 2551:8–21, 2552:10–19.

[6] RT, Vol. 4 (Feb. 23, 2010) at 658:11–659:17. The government further pointed to Mr. Reyes's email to James Bidzos stating "it is illegal to back date option grants" (JTX 648) and a collection of emails to Mr. Reyes relating to stock-option expenses and the adoption of FAS 123 (JTX 409).

[7] *See, e.g.*, RT, Vol. 4 at 487:5–7 ("I do recall that Finance was involved, and that the controller was being tapped into, as well, in terms of their guidance." (Cuevas)); *id.* at 507:8–9 ("I did understand that Finance was aware of the [part-time] program, yes." (Cuevas)); RT, Vol. 5 (Feb. 24, 2010) at 833:19–21 ("[Q.] Mike Byrd was, in fact, reviewing that NASDAQ printout with Stephanie Jensen, correct? A. That's what I took away, yes." (Lee)); JTX 77 (4/22/03 Bossi email to Weaver, Epstein, and Blucher: "New hire grants can happen whenever you want."); JTX 2080 (10/20/99 Byrd email to Jensen, "Please look at whether its to the employees advantage to grant the option on their start date."); RT, Vol. 8 (Mar. 2, 2010) at 1311:15–16 ("To my recollection, [the process by which stock options were priced] was a very open and

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

5.

DEF.'S MOTION FOR JUDGMENT OF ACQUITTAL
CR06-00556 CRB

was aware of, and found no fault with, options backdating is the backdated grant that the members of the Audit Committee awarded to themselves in April 2000.[8]

As to Brocade's Finance Department, the sole witness called by the prosecution, Richard Deranleau, testified that he did not rely on Mr. Reyes to provide information relating to the company's options programs (RT, Vol. 6 (Feb. 25, 2010) at 960:1–5), and did not know what the company's CFOs during the relevant period (Byrd and Canova) knew about stock-options accounting (*id.* 1018:18–1019:4). Treating Deranleau's testimony that he personally did not know of options backdating as representative of the CFOs under whom he worked is akin to the government's impermissible attempt in the 2007 trial to leverage Elizabeth Moore as a proxy for the entire Finance Department. In any event, Deranleau was not at Brocade for the SEC filings and Management Representation Letters upon which Counts Five, Six, Nine and Ten are based. (*See* Jury Instructions at 24 (Counts Five & Six) & 30 (Counts Nine & Ten).)

Because there is thus a total absence of evidence from which any inference can be drawn that senior finance executives or Audit Committee members were unaware of the company's options practices, the government cannot make the required showing of intent: if Brocade's accounting experts knew of the company's options practices and did not conclude that the financial statements failed to conform to APB 25, the government could not have established beyond a reasonable doubt that Mr. Reyes himself lacked "a good-faith belief that the alleged false or misleading statements were in fact accurate." (Jury Instructions at 36 ("Good Faith"));

---

communicative process with the finance organization." (Beyer)); *see also id.* at 1311:17–20 ("Q. And nobody in finance ever told you that the process of look-back pricing was wrong, correct? A. I don't recall ever hearing that specifically from anyone in finance." (Beyer)); JTX 2573 (4/4/02 Moore email to Beyer, Jensen, paperwork for backdated Soh grant "is with Bossi waiting for signature."); RT, Vol. 7 (Mar. 1, 2010) at 1145:15–1146:3 (Deranleau participated with Webb and Weaver in effort to improve company's options-granting practices); JTX 2506 (12/15/01 Blucher email re "Share Calculation"); JTX 2431 (7/31/01 Byrd email re "RE: Options – MBO"); JTX 2238 (11/13/00 email exchange between Gary and Scott Blucher re backdating part-time start date); JTX 2083 (10/22/99 Byrd email re "Setting Stock Options for Board Meeting"); JTX 2070 (10/4/99 Byrd email re "Price options"); JTX 2487 (11/6/01 Jensen email re "Pillar List from Finance").

[8] *See* RT, Vol. 10 (Mar. 4, 2010) at 1806:14–22, 1813:5–23, 1821:5–25, 1822:14–1823:4, 1831:2–5, & 1838:22–1840:3 (Miotto unable to conclude that 4/17/00 director grants to Sonsini, Nieman, Leslie, and Dempsey were not backdated).

1  *see also United States v. Reyes*, 577 F.3d 1069, 1076 (9th Cir. 2009) ("A key question therefore
2  became whether the Finance Department knew that the backdating scheme was taking place.")
3        Perhaps cognizant of this failure of proof, the government directed the jury's attention
4  elsewhere by arguing a lack of evidence that Mr. Reyes had relied on the Finance Department to
5  account properly for stock-option expenses. (*See, e.g.*, RT, Vol. 16 at 3016:11–16.) The defense
6  had no obligation to introduce such evidence, and none was required to undercut the
7  government's case. Given the uncontroverted evidence that the Finance Department prepared the
8  company's financial statements and management representation letters—with the oversight of the
9  Audit Committee—and that the CFO certified the accuracy of those statements, no additional
10  evidence of "reliance" was necessary to undermine a finding that Mr. Reyes acted with criminal
11  intent.[9]
12        The government also failed to produce evidence that Mr. Reyes deceived, directed, or
13  otherwise frustrated the accounting professionals' ability to access the information necessary for a
14  complete and accurate internal audit. Indeed, the government's witnesses testified that the
15  options-pricing process was not concealed from the Finance Department[10]; to the contrary, the
16  options process was described as "a very open and communicative process with the finance [and
17  HR] organization[s]." (RT, Vol. 8 at 1311:15–16 (Beyer).) Nor did any witness testify that Mr.
18  Reyes ever instructed anyone to conceal options-related information from Finance,[11] Legal,[12] the

---

[9] *See* RT, Vol. 6 at 1019:5–8 (department of CFO had ultimate responsibility for ensuring that accounting treatment for stock options in Brocade's financials was correct); *id.* 1060:14–20 (part of Audit Committee's "charter is to have oversight over the company's financial filings" and interact with Finance Department and outside auditors); RT, Vol. 7 at 1160:24–1161:8 (Mr. Reyes did not negotiate or draft management representation letters).

[10] *See, e.g.*, RT, Vol. 5 at 723:25–724:2 ("Q. You never did anything to conceal the options-pricing processes from anybody, did you? A. Correct." (Weaver)); *id.* at 698:19–22 ("Q. You would agree with me that the—there was never any effort to keep that process secret or hidden from anybody, correct? A. Correct." (Weaver)); RT, Vol. 8 at 1310:18–20 ("[Q.] And you never tried to conceal [the process by which stock options were priced] from anybody in the finance department, correct? A. No. That's correct." (Beyer)); RT, Vol. 4 at 541:23–25 ("Q. [Ms. Jensen] didn't do anything to try and hide the fact that she was looking at the price chart, did she? A. No." (Cuevas)).

[11] *See, e.g.*, RT, Vol. 4 at 548:25–549:3 ("[Q.] "[Mr. Reyes] never told you, you shouldn't talk or raise concerns with the finance department or the law department, or anybody else, correct? A. That's correct." (Cuevas)); RT, Vol. 5 at 724:3–6 ("Q. And Mr. Reyes never suggested that you should in any way, shape, or form conceal or hide the process from anybody, correct? A. Correct." (Weaver)); *id.* at 852:10–12 ("Q. [Mr. Reyes] never told you to withhold any information from the Finance Department, correct? A. Yes."

auditors,[13] outside counsel,[14] or the board of directors.[15]  This evidence is entirely inconsistent with a finding of criminal intent.

### 2. Mr. Reyes could not have acted knowingly if he did not understand that Brocade's options practices would have accounting implications under APB 25.

A further, independent basis to enter a judgment of acquittal is the insufficiency of the evidence to support a finding that Mr. Reyes was aware or understood that Brocade's stock option practices required taking an accounting charge under APB 25—that is, that Mr. Reyes acted

---

(Lee)); RT, Vol. 8 at 1354:22–25 ("[Q.] Greg Reyes never told you to withhold information relating to stock option pricing from Brocade's finance department, correct? A. No, he did not." (Beyer)); JTX 2506 (12/15/01 email from Blucher to Canova and Bossi re "Share Calculation" for stock prices on past dates); JTX 2431 (7/31/01 email from Byrd to Bossi using quarter low and quarter close prices for option modeling); JTX 2238 (11/13/00 email exchange between Gary and Scott Blucher re backdating part-time start date); JTX 2080 (10/20/99 Byrd email to Jensen, "Please look at whether its to the employees advantage to grant their option on their start date."); JTX 2083 (10/22/99 email response from Byrd to Jeff Seltzer stating that Byrd "took care" of setting Seltzer's options for a date six weeks earlier); JTX 2070 (10/99 emails exchanges where Byrd wants to see how stock prices "settle[] out" on numerous days before pricing an employee's option); JTX 2078 (10/18/99 email from Byrd to Bonnie Adamson-Smith seeking information on employees and option grants for which "the price may not have been set for"); JTX 128 (1/28/02 Beyer email to Jensen, "[P]er Bob any stock that we wish to give with a pre 1/26 price will need to be submitted to Bob prior to the end of this week.").

[12]  *See, e.g.*, RT, Vol. 4 at 548:25–549:3 ("[Q.] "[Mr. Reyes] never told you, you shouldn't talk or raise concerns with the finance department or the law department, or anybody else, correct? A. That's correct." (Cuevas)); RT, Vol. 5 at 724:3–6 ("Q. And Mr. Reyes never suggested that you should in any way, shape, or form conceal or hide the process from anybody, correct? A. Correct." (Weaver)); *id.* at 852:16–18 ("Q. [Mr. Reyes] never told you to withhold any information from the Law Department, correct? A. Correct." (Lee)); RT, Vol. 8 at 1355:4–6 ("Q. And he never told you to withhold information relating to stock option pricing from Brocade's legal department, correct? A. Correct." (Beyer)).

[13]  *See, e.g.*, RT, Vol. 5 at 724:3–6 ("Q. And Mr. Reyes never suggested that you should in any way, shape, or form conceal or hide the process from anybody, correct? A. Correct." (Weaver); *id.* at 852:13–15 ("Q. He never told you to withhold any information from the outside auditors, correct? A. Correct." (Lee)); RT, Vol. 8 at 1355:1–3 ("Q. And [Mr. Reyes] never told you to withhold information concerning stock option pricing from the auditors, did he? A. Correct." (Beyer)); *id.* at 1330:10–12, 15–17 ("[Q. D]id you ever once [in your prior testimony] advance the idea that Ms. Jensen's directive was for the purpose of covering an audit trail? . . . [A.]  For all those years and all those interviews, I can say I don't recall it coming up or me saying that, no." (Beyer)).

[14]  *See, e.g.*, RT, Vol. 5 at 724:3–6 ("Q. And Mr. Reyes never suggested that you should in any way, shape, or form conceal or hide the process from anybody, correct? A. Correct." (Weaver); RT, Vol. 8 at 1355:7–9 ("Q. And he never told you to withhold information relating to stock option pricing from Brocade's outside counsel, correct? A. Correct." (Beyer)).

[15]  *See, e.g.*, RT, Vol. 5 at 724:3–6 ("Q. And Mr. Reyes never suggested that you should in any way, shape, or form conceal or hide the process from anybody, correct? A. Correct." (Weaver)); RT, Vol. 8 at 1355:15–18 ("Q. Mr. Reyes never told you to withhold information relating to stock option pricing from Brocade's board of directors, correct? A. That's correct." (Beyer)).

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

8.

DEF.'S MOTION FOR JUDGMENT OF ACQUITTAL
CR06-00556 CRB

"knowingly," as required by each of the nine counts of conviction.[16] The prosecution's own witnesses underscored the fundamental confusion among finance and accounting professionals.[17] Indeed, APB 25, which was abolished as confusing,[18] was misunderstood by finance and accounting professionals within Brocade and throughout Silicon Valley.[19]

Without evidence of a personal understanding of the premises underlying APB 25, Mr. Reyes could not have knowingly falsified any company records or caused any false or misleading statement or omission.[20] In particular, the evidence at trial did not establish that Mr. Reyes

---

[16] Jury Instructions (Dkt. No. 1158) at 22 (Count Two), 25 (Counts Five, Six, and Seven), 27 (Count Eight), & 31 (Counts Nine, Ten, Eleven, and Twelve).

[17] *See, e.g.*, RT Vol. 10 at 1783:23–24 ("I'm not familiar with all the literature. If I have an issue, I call an expert." (Miotto)); *id.* at 1784:3–8 ("Q. I mean, the literature on stock options and how you account for stock options is extensive, and it's elaborate and it's confusing. Would you agree with that? A. Extensive, and it's elaborate, and sometimes it's confusing." (Miotto)); RT, Vol. 3 at 381:4–382:7 (Bidzos' testimony that VeriSign backdated options and had to restate financials as result); RT, Vol. 12 (Mar. 9, 2010) at 2267:20–2268:3 ("A substantial number of public companies, many of them Silicon Valley technology companies, disclosed in their public filings that they backdated stock options without taking a corresponding compensation charge. As a result, these companies restated their financial reports to recognize additional noncash stock-based compensation. Not all relevant details about the stock option granting practices at these companies were disclosed in their public filings." (Stipulation)). It is telling that after Deranleau testified that he relied on Gary Blucher as the Finance Department's resident APB 25 expert (RT, Vol. 6 at 1026:3–14), the government withdrew Blucher from its witness list.

[18] *See* RT, Vol. 8 at 1445:9–11 ("Q. And you're aware that APB 25 was essentially abolished effective December 2004, correct? A. Okay, yes." (Bowie)).

[19] *See* RT, Vol. 6 at 1024:9–23 (APB 25 was a "very complex piece of technical literature" with "different points of view in terms of the interpretation of that specific literature" (Deranleau)); RT, Vol. 7 at 1174:16–1175:1 (APB 25 disclosure is "extensive and complex" (Dereanleau)); RT, Vol. 9 (Mar. 3, 2010) at 1659:17–22 (two accountants looking at same guidance and facts could reach differing opinions, in good faith (Miotto)); *id.* 1668:13–16 (FAS 123 acknowledged ambiguities in APB 25 (Miotto)); RT, Vol. 10 at 1783:22–1784:8 (stock option literature is "[e]xtensive, and it's elaborate, and sometimes it's confusing" (Miotto)); *id.* 1855:19–24 & 1856:18–21 (large number of companies restated as result of backdated options (Miotto)); RT, Vol. 3 at 381:4–382:7 (VeriSign backdated options from 1999 to 2004 and restated its financials (Bidzos)); *id.* 382:19–22 (VeriSign took no APB 25 expenses for grants to executive officers (Bidzos)); *id.* 386:7–23 (VeriSign took no APB 25 expenses for grants to employees (Bidzos)); *id.* 353:22–354:8 (Bidzos not comfortable answering questions about APB 25 because he is not an accountant); *id.* 355:3–8, 355:11–17, & 356:3–19 (Bidzos, as CEO of VeriSign, did not read APB 25, had little understanding of measurement dates, and thought it was entirely proper to rely on finance department regarding VeriSign financials).

[20] *See United States v. Reyes*, 577 F.3d at 1080 ("The 'knowing' requirement protects those who accidentally record incorrect information because, for example, they are confused by accounting rules."); *City of Westland Police & Fire Ret. Sys. v. Sonic Solutions*, No. C 07-05111 CW, 2009 WL 942182, at *6 (N.D. Cal. Apr. 6, 2009) ("[C]ourts have concluded that APB No. 25 is a complex rule, and that a misapplication of APB No. 25 cannot be construed as a glaring example of scienter because the measurement date criteria embodied in APB No. 25 are far from obvious." (internal quotations omitted));

understood—or could have understood—the definition of "grant date" to mean definitively a date *other than* the day he signed the Compensation Committee minutes or Unanimous Written Consents.[21] The government's core theory of "falsity" on all counts—and, in particular, Count Eight—was that Mr. Reyes "knowingly" falsified Brocade's books and records simply by signing documents with a grant date preceding the date of his signature.[22] This argument rests on a presumption that such conduct is *per se* wrongful, but the jury instructions preclude a finding of guilt on that basis alone.[23]

In short, the government failed to prove beyond a reasonable doubt that Mr. Reyes knew or should have known that the signed documents were "false" in the only manner that could support a conviction: by knowing that the definition of "grant date" under APB 25 could only mean a date previous to the day Mr. Reyes signed. The only finding supported by the evidence is that Mr. Reyes acted in good faith by trusting that the accounting experts in Finance who—with knowledge of the company's options practices—properly accounted for these expenses and determined that Brocade's books and records, SEC filings, and representations to auditors were accurate.[24] Such a finding is a complete defense to each count and is inconsistent with findings that Mr. Reyes acted with fraudulent intent or that he knowingly and willfully committed any form of falsification or fraud. *Tarallo*, 380 F.3d at 1191.

---

*see also Weiss v. Amkor Tech., Inc.*, 527 F. Supp. 2d 938, 949 (D. Ariz. 2007) ("[T]he accounting rules at issue, specifically APB No. 25, are complex and require accounting expertise and judgment.").

[21] *See* RT, Vol. 9 at 1665:9–1666:2 (Miotto unaware of definition of "grant date" or "in the money" in APB 25 that would preclude backdating); *id.* at 1666:21–1667:10 (nothing in APB 25 requiring actual meeting for purposes of granting stock options); *id.* at 1651:8–21 (Miotto never spoke with Reyes about options accounting or APB 25); RT, Vol. 11 (Mar. 8, 2010) at 2154:17–20 (no definition of "grant date" in APB 25 (Fujimoto)).

[22] *See, e.g.*, RT, Vol. 3 (gov't opening) at 272:19–21 ("When he put pen to paper, he would know that what he was signing was false. He would know that he had not met on that date."); RT, Vol. 16 (gov't closing) at 2821:25–2822:2 ("Every time that the Defendant put pen to paper, he knew that what he was signing was false. He knew that it was not August 15th, 2003.").

[23] *See* Jury Instructions, Dkt. No. 1158, at 37 ("'Backdating'—insofar as that term means pricing stock options on a day prior to the date of the grant—is not in and of itself, a violation of the securities laws.").

[24] *See* Jury Instructions at 36 ("Good Faith") ("[I]f the evidence in the case leaves you with a reasonable doubt about whether Mr. Reyes acted with intent to commit the crime alleged in a particular count, or instead whether he possessed a good-faith belief that the alleged false or misleading statements were in fact accurate, you must find Mr. Reyes not guilty on that count."); *see also Tarallo*, 380 F.3d at 1191 (burden of proving good faith does not rest with defendant).

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

10. DEF.'S MOTION FOR JUDGMENT OF ACQUITTAL
CR06-00556 CRB

### C. Without Proving that Brocade's Finance Department and Audit Committee Were Unaware of Backdating, the Government's Evidence Does Not Establish that Mr. Reyes *Caused* the False Statements.

The government relied heavily in opening and closing on Mr. Reyes's alleged statements to Craig Martin in 2005 that he did not engage in backdating, arguing that these "false exculpatory statements" were dispositive evidence of a crime. (RT, Vol. 3 at 278:12–13; RT, Vol. 16 at 3009:5–8.) But even assuming—without conceding—that the evidence supports a finding of intent, the prosecution's theory improperly assumes that if (a) Mr. Reyes acted with the requisite criminal intent, and (b) Brocade's books and records were false, nothing more is required to support a conviction. The evidence of intent does not remedy the government's critical failure to establish that Mr. Reyes's conduct during 2000 to 2004 actually caused the allegedly false statements; such a showing could not be made in light of the evidence the company's Finance Department and Audit Committee knowingly approved the same books and records upon which the verdict rests.

As discussed in detail above, the evidence is uncontroverted that Finance prepared Brocade's financial statements and, together with the Audit Committee, was responsible for ensuring the company's compliance with APB 25.[25] These same individuals signed the SEC filings and certifications to auditors upon which the conviction rests,[26] and the government did not prove—nor even attempt to prove, perhaps in light of the Ninth Circuit's opinion—that Finance was unaware of the company's options-pricing practices. Whether the accounting professionals' decision not to expense Brocade's options under APB 25 resulted from confusion or misunderstanding about the dictates of APB 25 (or perhaps more likely, from inattention or indifference) their position in the options process—between Mr. Reyes and the false statements at issue in this case—precludes a conviction on any count. Simply put, no rational juror could find

---

[25] *See* RT, Vol. 6 at 1019:5–8 (Brocade's Finance Department, in particular its CFO, "had the ultimate responsibility for ensuring that the accounting treatment for stock options in Brocade's financials was correct[.]" (Deranleau)).

[26] *See* JTX 22 at 0022_068 (FY2001 10-K, Count Five); JTX 27 at 0027_079, 081, & 102 (FY2002 10-K, Count Six); JTX 32 at 0032_091 & 110–111 (FY2003 10-K, Count Seven); JTX 44 at 0044_008–009 (11/18/02 Mgmt. Rep. Ltr., Count Nine); JTX 27.1 (2003 Certification, Count Ten); JTX 46 at 0046_010 (11/14/03 Mgmt. Rep. Ltr., Count Eleven); JTX 32.1 (2004 Certification Count Twelve).

beyond a reasonable doubt that Mr. Reyes caused the false statements despite the knowledge and approval of senior finance executives and Audit Committee members.

### D. The Government Failed to Produce Evidence Sufficient To Support a Finding That Any Alleged False Statement or Omission Was Material to a Reasonable Brocade Investor.

For each of Counts Two, Five through Seven, and Nine through Twelve, the government was required to prove beyond a reasonable doubt that a reasonable investor, "when deciding whether to buy, sell, or hold a security, would have viewed the misrepresentation or omission as having significantly altered the total mix of information."[27] Although the government called two witnesses in this trial who actually invested in Brocade, the evidence nonetheless failed to establish that the alleged omission of a non-cash APB 25 compensation expense was material to a reasonable investor.

To establish materiality "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic, Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988) (internal quotations and citation omitted). Ultimately, the prosecution must establish that a reasonable investor *would have acted differently* if the omission or misrepresentation had never occurred. *Livid Holdings, Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). There is no such evidence in the record.

First, the prosecution failed to demonstrate that the disclosure of a non-cash APB 25 compensation expense would have significantly altered the total mix of information available to investors. For example, Carol Bowie testified that FAS 123 is a more informative disclosure and a better piece of information for investors than APB 25.[28] (RT, Vol. 8 at 1451:1–9 & 1472:23–1473:23.) Brocade's then-Controller, Richard Deranleau, further testified that the FAS 123

---

[27] *See* Jury Instructions (Dkt. No. 1158) at 23 (Count Two), 26 (Counts Five, Six, and Seven), & 32 (Counts Nine, Ten, Eleven, and Twelve).

[28] The prosecution also called Bowie, a proxy advisor, and Robert McCormick, who voted proxies for Fidelity. Both Bowie and McCormick testified that they were not involved in investment decisions related to Brocade. (RT, Vol. 6 at 913:17–19 & 916:2–5; RT, Vol. 8 at 1442:3–4 & 1442:8–11.) The fact that Bowie and McCormick and their respective organizations recommended voting against allowing discounted stock options is insufficient for a rational juror to conclude that non-cash APB 25 compensation expenses would have been material to a reasonable investor at the time of the omission.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

12.

DEF.'S MOTION FOR JUDGMENT OF ACQUITTAL
CR06-00556 CRB

disclosures in Brocade's SEC filings fully disclosed the company's option expenses. (RT, Vol. 6 at 1032:18–21, 1041:3–18 & 1042:4–24.) As Deranleau stated, the APB 25 disclosure is "unhelpful to the investors and the investment community" because it is a non-cash expense which can obscure the underlying performance of the company. (RT, Vol. 7 at 1139:15–25.) These witnesses affirmatively disputed the materiality of the information disclosed by APB 25.

The investor witnesses fared no better in shoring up the government's case on materiality. Indeed, the prosecution offered no evidence that a reasonable investor would have changed—or even seriously considered—a decision to purchase or sell Brocade stock if, at the time of the decision, the investor had known of the APB 25 non-cash compensation charge. Kevin Kilgannon testified that he did not use 10-Ks for his research—and of course, the 10-K is where the disclosure of the APB 25 non-cash compensation expense would have taken place. (RT, Vol. 12 at 2298:2–5.) Kilgannon also could not testify that the GAAP income statement was used in the research to which he subscribed. (*Id.* 2298:6–13.) There is simply no evidence that he would have even considered the APB 25 non-cash compensation charge if Brocade had taken such a charge in 2000 through 2004—let alone believed that such charges altered the total mix of information available at the time. Similarly, David Ryan stated that he did not read 10-Ks, had never looked at Brocade's earnings per share, and had never looked at Brocade's net-income numbers. (*Id.* 2331:25–2332:1 & 2332:24–2333:5.) Like Kilgannon, Ryan did not state a view that the APB 25 non-cash compensation charge affected the total mix of information about Brocade.

In addition, neither Ryan nor Kilgannon testified that they sold their stock on January 7th *because* they cared about a non-cash APB 25 compensation charge. Kilgannon indicated that he sold because he believed the company's prior statements were false—not because the omitted fact was material.[29] This is not a proper basis for a finding of materiality. *See Basic Inc. v. Levinson*, 485 U.S. 224, 237 (1988) ("[A] plaintiff must show that the statements were misleading as to a

---

[29] Kilgannon also sold 1,000 shares on January 6, 2005 even though Brocade's press release was not released until after the stock market closed. (RT, Vol. 12 at 2297:5–13.) This creates, at a minimum, reasonable doubt that Kilgannon sold his Brocade shares for reasons other than Brocade's inaccurate accounting for stock option expenses under APB 25.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

13.     **DEF.'S MOTION FOR JUDGMENT OF ACQUITTAL
CR06-00556 CRB**

material fact. It is not enough that a statement is false or incomplete, if the misrepresented fact is otherwise insignificant."); *Greenhouse v. MCG Capital Corp.*, 392 F.3d 650, 656 (4th Cir. 2004) (noting that securities laws "decidedly do not prohibit any misrepresentation—no matter how willful, objectionable, or flatly false—of [immaterial] facts, even if it induces reactions from investors that, in hindsight or otherwise, might make the misrepresentation appear material."). To credit Kilgannon's testimony that he sold his Brocade shares due simply to "falsity" reads the materiality requirement out of the statute and contradicts this Court's prior holding: "If a misrepresentation is deemed material simply because it is a misrepresentation, then the law's materiality requirement is altogether meaningless." *SEC v. Reyes*, 491 F. Supp. 2d 906, 912 n.6 (N.D. Cal. 2007).

Ryan, for his part, stated that his decision to sell was based on the high trading volume on January 7th—not the underlying fact that was omitted from the prior financial statements. (RT, Vol. 12 at 2347:8–19.) He further stated that Brocade's press release on January 6th did not quantify the restatement, and that uncertainty can influence stock price regardless of the strength of the company's fundamentals. (*Id.* 2352:4–9.) Together, Ryan and Kilgannon provide no support for a finding that a reasonable investor, in light of the total mix of information available, would have changed his decision regarding a purchase or sale of Brocade stock if at the time of the decision, he knew of the omitted non-cash APB 25 compensation charge.

To the contrary, the investor witnesses testified that the FAS 123 disclosures more than adequately disclosed Brocade's stock option expenses. Kilgannon testified that the aggregate of $1.2 billion in stock option expenses that Brocade disclosed in its 10-Ks between 2000 and 2003 indicated how the company's financial statements would have looked like after accounting for stock option expenses. (RT, Vol. 12 at 2292:17–2293:3.) Even more tellingly, Ryan testified that the market would have absorbed and factored into Brocade's stock price the FAS 123 disclosure that reported upwards of $1.2 billion in stock compensation expenses. (*Id.* 2339:2–13 & 2339:22–2340:4; *see also* JTX 32 at 60.) In light of this affirmative testimony by the government's own witnesses, no rational juror could conclude that Brocade's failure to disclose

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

14. **DEF.'S MOTION FOR JUDGMENT OF ACQUITTAL**
**CR06-00556 CRB**

the non-cash APB 25 compensation expense significantly altered the total mix of information available to investors.

### IV. CONCLUSION

For the reasons above, Mr. Reyes respectfully requests that this Court enter a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c).

Dated: April 9, 2010  COOLEY GODWARD KRONISH LLP

  _/s/ Stephen C. Neal_
  STEPHEN C. NEAL

  Attorneys For Defendant
  GREGORY L. REYES

842314 v9/HN