DAVID L. ANDERSON (CSBN 149604)
Acting United States Attorney

BRIAN J. STRETCH (CSBN 163973)
Chief, Criminal Division

ADAM A. REEVES (NYSB 2363877)
Assistant United States Attorney

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102
   Telephone: (415) 436-7157
   Facsimile: (415) 436-7234
   Adam.Reeves@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>GREGORY L. REYES,<br><br>    Defendant. | No. CR 06-0556 (CRB)<br><br>**UNITED STATES' MEMORANDUM OF LAW IN SUPPORT OF ITS POSITION ON LOSS AND RESTITUTION**<br><br>Date: June 24, 2010<br>Time: 2:00 p.m.<br>Place: Courtroom 8 |

## INTRODUCTION

In calculating the loss amount in this case, the Court will have the benefit of Ninth Circuit authority that is directly on point and barely six months old, and an expert opinion applying that authority precisely to the facts of this case. *See United States v. Berger*, 587 F.3d 1038, 1046-47 (9th Cir. 2009); Expert Report of D. Paul Regan, Chairman of Hemming Morse, Inc. (Attachment 1 to the accompanying declaration of AUSA Adam A. Reeves) ("Expert Report"). Together these materials reveal a loss amount that may be conservatively estimated at $136.7 million. *See* Expert Report at 18 ("it is likely that this estimate is understated"). The defendant

UNITED STATES' MEMORANDUM OF LAW IN SUPPORT OF ITS POSITION ON LOSS AND RESTITUTION
*United States v. Reyes*, Case No. CR-06-0556 (CRB)

1

personally profited by at least $37.1 million on stock sales he made while Brocade's stock price was artificially inflated by his fraudulent scheme. *Id.* at 30-31 (this estimate is "very conservative"). In only the first day after Brocade announced the need to restate, shareholders actually suffered more than $6.3 million in losses. *Id.* at 4. They lost millions more in the days and weeks to come. These loss estimates in the Expert Report provide the Court with a solid basis to calculate the loss and restitution amounts in this case.

For four years, the defendant has repeatedly – and falsely – claimed that he did not profit from his crime and that shareholders did not care and were not harmed by his fraud. *See e.g.* July 26, 2007 Trial Record (Defense Summation) at 3915 ("This is not a case of a CEO lining his own pockets.... Investors don't care about stock option expenses ...") and 3922 ("The government would have you believe he [*i.e.* Reyes] spent his time concocting a conspiracy, risking it all, ... for non-cash expenses, for something that he knew and everyone knew investors didn't care about."). At the first trial of this case, the defendant attempted to support this claim with testimony that the jury implicitly rejected in its verdicts. At the second trial of this case, the defendant did not renew this attempt.

At sentencing, the United States urges this Court to explicitly reject the defendant's claim that his fraud was victimless and harmless. Relying on the *Berger* case and the Expert Report, the Court should make a reasonable estimate of the loss caused by the defendant's fraud scheme and order him to pay restitution to the innocent shareholders who suffered that loss.

## ARGUMENT

**1.  THE COURT SHOULD FIND THAT SHAREHOLDERS LOST NO LESS THAN $137.1 MILLION. TO GIVE THE DEFENDANT THE BENEFIT OF EVERY POSSIBLE DOUBT, THE COURT SHOULD USE A LOSS AMOUNT OF ONLY $6.3 MILLION IN CALCULATING HIS SENTENCE.**

The starting point for the Court's loss analysis is Sentencing Guidelines Section 2B1.1. *See United States v. Cantrell*, 433 F.3d 1269, 1280 (9th Cir. 2006) (the consultation requirement of 18 U.S.C. § 3553(a) "obliges the district court to calculate correctly the sentencing range prescribed by the Guidelines"). Guidelines Section 2B1.1(b)(1) directs the Court to make "a reasonable estimate of the loss." U.S.S.G. § 2B 1.1, comment. (n.3(C)). In cases involving

UNITED STATES' MEMORANDUM OF LAW IN SUPPORT OF ITS POSITION ON LOSS AND RESTITUTION
*United States v. Reyes*, Case No. CR-06-0556 (CRB)

2

equity securities or other corporate assets, that loss amount is measured as the "reduction that resulted from the offense in the value of equity securities or other corporate assets." *Id.* (n.3(C)(v)).

Last November, in *United States v. Berger*, 587 F.3d 1038 (9th Cir. 2009), the Ninth Circuit provided new authority on the measurement of loss amounts in securities fraud cases. Like the defendant presently before this Court, Berger was the CEO and board chairman of a publicly held company. *Id.* at 1040. Following a restatement, the stock price of his company fell. *Id.* Berger was criminally indicted and eventually convicted. *Id.* at 1041. On appeal, the Ninth Circuit held as follows on the calculation of the loss amount under the Sentencing Guidelines:

> While we do not dictate the exact method the district court must use, we note that whatever method is chosen should attempt to gauge the difference between [the issuer's] share price – as inflated through fraudulent representation – and what that price would have been absent the misrepresentation. [*Id.* at 1046-47.]

In a footnote, the Ninth Circuit emphasized the importance of making at least some estimate of the loss. *Id.* at 1046 n.12 ("In concluding that the district court's method was erroneous, we do not suggest that Berger's fraud caused no loss to investors."); *see also id.* at 1045 ("the court need only make a reasonable estimate of the loss").

To apply *Berger* to this case, the United States has obtained an expert opinion which calculates "the difference between [Brocade's] share price – as inflated through fraudulent representation – and what that price would have been absent the misrepresentation." *See id.* at 1046-47; Expert Report at 4 n.8 (citing *Berger*). The author of this expert opinion is D. Paul Regan, CPA/CFF, CFE, who is the Chairman of Hemming Morse, Inc., CPAs, Litigation and Forensic Consultants. Expert Report at 1.

The Expert Report estimates that Brocade shareholders experienced a loss between $136.7 million and $226.1 million as measured by the reduction in the value of their equity securities. Expert Report at 4. As described in that Expert Report, these estimates are "the most appropriate method" for estimating the loss amount using the standard set forth in *Berger*. *Id.*

UNITED STATES' MEMORANDUM OF LAW IN SUPPORT OF ITS POSITION ON LOSS AND RESTITUTION
*United States v. Reyes*, Case No. CR-06-0556 (CRB)

3

The low end of this range, $136.7 million, is "extremely conservative," because it measures the loss amount on the assumption that Brocade's stock price decline was limited to one day, when in fact "Brocade's stock price experienced a constant and persistent decline in the eleven months following the January 6, 2005 announcement." *Id.* at 18.

These were not mere "paper losses." In the 90 days following Brocade's initial restatement announcement on January 6, 2005, shareholders actually realized losses on actual stock sales in an amount estimated as $108.7 million to $197.8 million. *Id.* In just the first day after the January 6 announcement, selling shareholders actually realized losses conservatively estimated at more than $6.3 million. *Id.*

These losses were not mitigated by a "bounce back" effect, because Brocade's share price remained depressed until September 2006, except only for a brief period of a few days in April 2006. *Id.* at 20. Further, shareholder losses cannot be explained by stock price movements in the broader market or among Brocade's self-identified peer group. *Id.* at 24-26 (calculating realized losses of $108.7 million using Brocade's NASDAQ-predicted share price), 26-29 (calculating realized losses of $197.8 million using Brocade's competitor-predicted share price).

The Expert Report provides this Court with a solid factual basis to estimate the losses of Brocade's victim shareholders under the *Berger* case in a "most appropriate" and "extremely conservative" amount of $137.1 million. *Id.* at 4, 18. In the interest of even greater conservatism, the United States submits that the sentencing range in this case should be calculated with reference to the actual losses realized by selling shareholders on the first day after the January 6, 2005 announcement. This loss amount is $6.3 million. *Id.* at 4.[1]

2. **THE COURT SHOULD ORDER THE DEFENDANT TO PAY RESTITUTION OF $37.1 MILLION, THE MOST CONSERVATIVE ESTIMATE OF THE AMOUNT OF THE EXCESS GAINS HE PERSONALLY REALIZED FROM HIS STOCK SALES DURING THE FRAUD SCHEME.**

Restitution is authorized in this case as a condition of supervised release under 18 U.S.C.

---

[1] This loss amount of $6.3 million was suffered by 1269 shareholder victims. Expert Report at 34-35 (this estimate of the number of victims is "extremely conservative, and in all likelihood, significantly understates the actual number of victims").

UNITED STATES' MEMORANDUM OF LAW IN SUPPORT OF ITS POSITION ON LOSS AND RESTITUTION
*United States v. Reyes*, Case No. CR-06-0556 (CRB)

4

§ 3583(d) and U.S.S.G. § 5E1.1(a)(2).[2] Restitution should be made to victims who were "directly and proximately harmed as a result of the fraud." *Berger*, 587 F.3d at 1044, n. 7 (affirming restitution of $3.14 million). Under the Sentencing Guidelines, restitution should be made for "the full amount of the victim's loss." U.S.S.G. § 5E1.1(a)(2).

As described above, the most appropriate and conservative estimate of the full amount of the loss in this case is $137.1 million. Although the defendant has the apparent ability to pay this full amount, in the interest of even greater conservatism, the United States submits that restitution should be ordered only in the amount that the defendant personally profited from his fraudulent scheme. The Expert Report estimates the defendant's excess gains in an amount between $37.1 million and $61.4 million. Expert Report at 29 (these estimates are "conservative and reasonable"). The low end of this range, $37.1 million, is "very conservative." *Id.* at 31. This amount represents the excess gains to the defendant realized only because his stock sales were made at prices that were artificially inflated by his fraudulent scheme. This is the restitution amount that should be ordered by the Court.

To ensure the fair and efficient distribution of this restitution to the victim shareholders, the undersigned counsel has contacted Epiq Class Action and Claims Solutions. Epiq is the claims administrator for the class-action settlement in the Brocade securities litigation before this Court. *See* Declaration of Aaron Waugh regarding the Mailing of Notice and Proof of Claim, *In re: Brocade Securities Litigation*, 3:05-CV-02042 (CRB) (Document #487) (filed January 15, 2009). Because Epiq has already received claims packages from the shareholder class in the civil case, Epiq will be well positioned to assist this Court in distributing restitution in this case.

//

---

[2] Because the defendant was convicted of offenses under Title 15 but not Title 18, restitution is not authorized under 18 U.S.C. § 3663 or § 3663A. *See United States v. Frith*, 461 F.3d 914, 919 (7th Cir. 2006) (citing 3 Bromberg and Lowenfeld, Securities Fraud and Commodities Fraud, § 6:374 at 6-1024 to 25 (2d ed. 2006)). However, the conditions of restitution as set forth in 18 U.S.C. §§ 3663-3663A remain relevant under U.S.S.G. § 5E1.1(a)(2), which directs the Court to order restitution when those conditions are met.

UNITED STATES' MEMORANDUM OF LAW IN SUPPORT OF ITS POSITION ON LOSS AND RESTITUTION
*United States v. Reyes*, Case No. CR-06-0556 (CRB)

5

**CONCLUSION**

The Court should find that the loss amount in this case is no less than $137.1 million. To give the defendant the benefit of every possible doubt, however, the Court should calculate the defendant's sentencing range with reference to only $6.3 million of those losses and order restitution of only $37.1 million.

DATED: April 30, 2010

DAVID L. ANDERSON
Acting United States Attorney

/s/
_____

ADAM A. REEVES
Assistant United States Attorney

UNITED STATES' MEMORANDUM OF LAW IN SUPPORT OF ITS POSITION ON LOSS AND RESTITUTION
*United States v. Reyes*, Case No. CR-06-0556 (CRB)

6