COOLEY LLP
STEPHEN C. NEAL (170085)
(nealsc@cooley.com)
NEAL J. STEPHENS (152071)
(nstephens@cooley.com)
SCOTT D. DEVEREAUX (146050)
(devereauxsd@cooley.com)
KATHLEEN H. GOODHART (165659)
(kgoodhart@cooley.com)
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA  94306-2155
Telephone:  (650) 843-5000
Facsimile:   (650) 857-0663

Attorneys for Defendant
GREGORY L. REYES

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | Case No. CR06-00556 CRB |
|---|---|
| Plaintiff, | **DEFENDANT GREGORY L. REYES'S OBJECTION AND RESPONSE TO THE UNITED STATES' SENTENCING MEMORANDUM** |
| v. | |
| GREGORY L. REYES, | Date:          June 24, 2010 |
| Defendant. | Time:         10:00 a.m. |
| | Dept.:        Courtroom 8, 19th Floor |
| | Judge:       Hon. Charles R. Breyer |
| | Trial Date:  February 22, 2010 |

## I.   INTRODUCTION

Mr. Reyes respectfully submits this Objection and Response to the United States' Sentencing Memorandum (Dkt. No. 1197 ("U.S. Sent. Mem.")), filed on Thursday, June 17, 2010.  Because the government filed its memorandum several days after the deadline imposed by Criminal Local Rule 32-5(b) (no later than four days after the disclosure of the final Presentence Investigation Report), Mr. Reyes objects to the memorandum as untimely and requests that the Court strike or disregard the memorandum in its entirety.

However, even if the Court considers the government's late filing, the arguments raised in the government's sentencing memorandum provide no basis to implement its sentencing recommendations.  For these reasons, explained below and in his sentencing memorandum, Mr. Reyes respectfully requests that the Court impose a sentence that (1) varies downward from the Guideline range, (2) sets the minimum term of supervised release, (3) orders no restitution, and (4) substantially reduces the $15 million fine imposed in 2008.

## II.   DISCUSSION

### A.   The Government's Sentencing Memorandum Was Filed Late Without Explanation or Excuse, and Should Be Stricken or Disregarded.

This Court's local rules state that "*Any* sentencing memorandum [*i.e.*, other than a response] *shall* be filed *no later* than 4 days after the final presentence report is disclosed." CRIM. L.R. 32-5(b) (alteration and emphasis added).  As required by this local rule, Mr. Reyes submitted his sentencing memorandum ("Def.'s Sent. Mem.") on Monday, June 14,[1] four days after the United States Probation Office disclosed its final Presentence Investigation Report ("PSR").  The government filed nothing that day, and did not seek leave of Court to file a sentencing memorandum after the deadline imposed by Rule 32-5(b).  Instead, the government filed its principal sentencing memorandum on Thursday, June 17th—three days after the deadline.

---

[1] Mr. Reyes's principal sentencing memorandum was lodged with the Court and served on counsel for the United States on Monday, June 14, 2010, pending a ruling on Mr. Reyes's Administrative Motion to Seal the Memorandum and the supporting Declaration of Neal J. Stephens, with exhibits.  (*See* Dkt. No. 1195.)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

1.

DEF.'S OBJ. & RESPONSE TO UNITED
STATES' SENTENCING MEM.
CR06-00556 CRB

1     In addition, there is no way to interpret the government's memorandum as a "response."

2  The government's memorandum makes no arguments responding (directly or otherwise) to Mr.

3  Reyes's sentencing memorandum, and cites his memorandum only once, in passing.  (*See* U.S.

4  Sent. Mem. at 3:20–21); *see also* CRIM. L.R. 32-5(c) ("Response to Sentencing Memorandum").

5  The government's filing is a *principal* sentencing memorandum that should have been filed on

6  Monday, June 14, to allow the defense to file a response on Friday, June 18.

7     The government also missed the deadline to serve on the defense and the Probation

8  Office its objections to the proposed PSR, and submitted those objections late only after being

9  reminded by the Probation Officer of the date the government received the proposed PSR.[2]  The

10  government's repeated failure to adhere to the local rules—first missing the deadline for its PSR

11  objections, and then filing its sentencing memorandum three days late—supports Mr. Reye's

12  request that the Court disregard the government's sentencing proposals.

13  **B.    The Government Does Not Dispute that the Clear-and-Convincing Standard
        Should Apply to Factual Findings Relating to All Enhancements.**

14

15     As Mr. Reyes has repeatedly argued, factual findings related to the sentencing

16  enhancements requested by the government should be subject to the clear-and-convincing

     standard.  (*See* Def.'s Response to United States' Mem. of Law in Support of Its Position on
17
     Loss and Restitution ("Loss Response") (Dkt. No. 1183) at 11:6–12:14; Def.'s Sent. Mem.
18
     at 4:4–5:5.)  In light of the government's silence on this issue, the Court should again find that
19
     the clear-and-convincing standard is appropriate in this case under the "totality of the
20
     circumstances" test set forth in *United States v. Jordan*, 256 F.3d 922, 928 (9th Cir. 2001).  (*See*
21
     Order re Sentencing Guidelines (Dkt. No. 737) at 2:11–24.)
22

23

24

25

26

     _____
27  [2] *See* Exhibit A to the Declaration of Neal J. Stephens in support of Defendant's Response to the United
     States' Sentencing Memorandum (email from U.S. Probation Officer Specialist Benjamin Flores to
28  Assistant United States Attorney Adam A. Reeves, dated Friday, June 4, 2010).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

2.

DEF.'S OBJ. & RESPONSE TO UNITED
STATES' SENTENCING MEM.
CR06-00556 CRB

1

2

**C.      The Government Introduced No New Evidence at Trial that Would Support a Loss Enhancement—Without which an Increased Sentence on Retrial Would Be Subject to a Presumption of Vindictiveness.[3]**

3

In his prior briefing, Mr. Reyes asserted that an increased sentence after appeal, remand,

4

and retrial would be presumed "vindictive" because the trial record does not reflect "objective

5

information . . . justifying [an] increased sentence."  (Def.'s Sent. Mem. at 5:6–17 (quoting

6

*United States v. Rapal*, 146 F.3d 661, 663 (9th Cir. 1998) (internal quotations and citations

7

omitted)); *see also* Def.'s Loss Response (Dkt. No. 1183) at 8 n.9.)  Without directly responding

8

to Mr. Reyes's argument, the government asserts that "adding sixteen months to the defendant's

9

prison sentence, from 21 months to 37 months, would not be vindictive because the new

10

sentence would be based on new evidence establishing the loss to victim shareholders . . . and

11

personal gain to the defendant . . . that was not part of the record at the 2008 sentencing

12

hearing."  (U.S. Sent. Mem. at 4:22–26.)

13

At the outset, the government's argument reveals that the *only* basis on which it attempts

14

to justify an increased sentence is a loss enhancement.  Accordingly, if the Court declines to

15

impose such an enhancement, the government implicitly concedes that an increased sentence

16

would be unsupportable.

17

As to the specific information relied on by the government, this "evidence" is not new,

18

objective, or reliable, and thus cannot support a non-vindictive increase in Mr. Reyes's sentence.

19

First, the government cites the expert reports submitted by D. Paul Regan in support of the

20

government's requested loss enhancement.  (*See* Dkt. Nos. 1181-1 & 1186.)  As explained in

21

Mr. Reyes's opposition to the government's requested loss enhancement, the government's

22

expert reports are substantively and analytically identical to the "one-day loss" theory this Court

23

soundly rejected in the first sentencing.  (*See generally* Def.'s Loss Response (Dkt. No. 1183).)

24

25

26

27

28

---

[3] Because the government presents no new arguments supporting enhancements for number of victims (U.S.S.G. § 2B1.1(b)(2)), sophisticated means (*id.* § 2B1.1(b)(9)), aggravating role (*id.* § 3B1.1), and obstruction of justice (*id.* § 3C1.1(A)), Mr. Reyes refers the Court to his prior briefing on those issues. (*See* Def.'s Loss Response (Dkt. No. 1183) at 25 n.25 (number of victims); Def.'s Sent. Mem. at 7:10–8:5 (number of victims); *id.* at 8:6–9:4 (sophisticated means); *id.* at 9:5–17:12 (aggravating role); *id.* at 17:13–18:20 (obstruction of justice).

**DEF.'S OBJ. & RESPONSE TO UNITED STATES' SENTENCING MEM.**
**CR06-00556 CRB**

1   The government's attempt to resuscitate that theory provides no basis to impose a loss

2   enhancement or otherwise increase Mr. Reyes's sentence.  (*See id.*)

3       Second, the government cites Trial Exhibits 403 (at pg. 00046), 453, and 460.  If the

4   government believed that these exhibits constituted "new evidence establishing the loss to victim

5   shareholders . . . and personal gain to the defendant" (U.S. Sent. Mem. at 4:24–26), the

6   government was obligated to cite these exhibits in its motion for a loss enhancement.  But the

7   government's principal loss-enhancement brief omitted any mention of these exhibits, and the

8   government's expert disclaimed any reliance on them in either of his reports.[4]  Only in the

9   government's reply brief did it suggest, for the first time, that the Court impose a loss

10  enhancement using the "alternative" measure of Mr. Reyes's purported gain from the sale of

11  allegedly backdated options.  (*See* Dkt. No. 1185 at 6:2–11.)

12      Mr. Reyes reiterates his objection to the government's late attempt to seek a loss

13  enhancement based on information not relied upon in its initial brief.[5]  But even if the Court

14  considers the government's belated suggestion, the government's sentencing memorandum

15  offers no explanation of how these trial exhibits support a finding that an increased sentence is

16  appropriate.  In short, because the government fails to identify or explain new, objective

17  information justifying an increased sentence, Mr. Reyes respectfully submits that an increased

18

19  [4] *See generally* United States' Mem. of Law in Support of Its Position on Loss and Restitution (Dkt. No. 1180); Expert Report of D. Paul Regan (Apr. 30, 2010), Exhibit B ("Documents Considered");

20  Supplemental Expert Report of D. Paul Regan (May 21, 2010) at 9, ¶ V (stating that all sources relied upon in supplemental report "are identified in Exhibit B to my Original Report," and that "any sources I

21  have relied upon that are not reflected in Exhibit B . . . [are disclosed] within the footnotes of this report"); *see generally id.* (no reference to trial exhibits 403, 453, or 460 in any footnote)).

22  [5] *See* Def.'s Objection to United States' Reply Mem. of Law in Support of Its Position on Loss and Restitution (Dkt. No. 1190).  The government's response to Mr. Reyes's objection is devoid of substance:

23  the government simply asserts that its "alternative argument regarding gain is proper because, among other reasons, it is responsive to the defendant's earlier claim that neither loss nor gain could be

24  reasonably estimated." (U.S. Sent. Mem. at 3 n.1.)  One is left to guess what "other reasons" the government is referencing, but the single argument it identifies is not persuasive.  Mr. Reyes's response

25  to the arguments presented in the government's loss-enhancement brief—*i.e.*, that "there remains no factual basis or analytical method to calculate loss or gain in a manner consistent with the Guidelines and

26  applicable case law"—could not have come as a surprise to the government.  (Def.'s Loss Response (Dkt. No. 1183) at 22.)  If the government believed that its "alternative argument regarding gain" was worthy

27  of the Court's consideration, it could (and *should*) have included that argument in its principal brief rather

28  than raising it for the first time in its reply.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

4.

DEF.'S OBJ. & RESPONSE TO UNITED
STATES' SENTENCING MEM.
CR06-00556 CRB

1    sentence on retrial is constitutionally impermissible.  *See United States v. Garcia-Guizar*, 234

2    F.3d 483, 490 (9th Cir. 2000).

3        **D.    The Government Did Not Object to the PSR's Recommendation that the**
             **Court Consider a Downward Variance from the Guideline Range.**

4

5        In the proposed PSR disclosed on May 10, 2010, the Probation Office recommended that

6    the Court "consider a sentence below the advisory guideline range, pursuant to 18 U.S.C.

7    § 3553(a), based on the defendant's personal history and characteristics."  (*See* Proposed PSR

8    (May 20, 2010), at 19, ¶ 83.)  The government's late-filed objections to the proposed PSR made

9    no reference to this recommendation, and the final PSR retains the same recommendation.  (*See*

10   Final PSR (June 10, 2010) at 20, ¶ 86; *see also id.*, Sentencing Recommendation at 2–3.)  Based

11   on the government's waiver of any objection to a below-Guidelines sentence (*see* CRIM. L.R. 32-

12   4, Commentary ("objections not raised to the Probation Officer may not be considered by the

13   Court absent a showing of good cause")), as well as the reasons set forth in Mr. Reyes's

14   sentencing memorandum (*see* Def.'s Sent. Mem. at 18–34), Mr. Reyes respectfully submits that

15   the core purposes of sentencing would be well served by a below-Guidelines sentence in this

16   case.  *See* 18 U.S.C. § 3553(a) (noting that court "shall impose a sentence sufficient, but not

17   greater than necessary, to comply with the purposes" of sentencing evidenced in seven

     enumerated factors).

18

19       **E.    The Government Fails To Show that a Below-Guidelines Sentence Would Be**
             **Insufficient To Satisfy the Factors Under 18 U.S.C. § 3553(a) and the**
             **Purposes of Sentencing.[6]**

20

21       The government argues that a 37-month term of imprisonment would be "proper and

22   reasonable" because (1) such a sentence "would demonstrate that corporate fraud by a chief

23   executive officer is always a serious offense that will result in serious punishment"; and

24   (2) "only a multi-year prison sentence will adequately promote respect for the law and have a

25

26   [6] Mr. Reyes refers the Court to the discussion in his principal sentencing memorandum of the § 3353(a)
     factors not addressed in the government's sentencing memorandum.  (*See* Def.'s Sent. Mem. at 23:16–
27   28:23 (nature and circumstances of offense and personal history and characteristics, § 3353(a)(1)); *id.*
     at 32:15–33:8 (kinds of sentences available, § 3353(a)(3)); *id.* at 34:21–23 (need to provide restitution,
28   § 3353(a)(7)).)

deterrent effect on other corporate executives tempted to undertake similar frauds." (U.S. Sent. Mem. at 4:2–9.)

As Mr. Reyes explained in his sentencing memorandum, each of the § 3353(a) factors (including those cited by the government) would be satisfied by a sentence far less than the government's 37-month recommendation. (*See* Def.'s Sent. Mem. at 28:25–31:5.) The government's sentencing memorandum merits no supplemental response on those points, with one exception: its argument that the August 2006 press release issued by Mr. Reyes's former trial counsel contained "misleading public statements that minimized the significance of his intentional falsification of corporate records." (U.S. Sent. Mem. at 4:10–11.) According to the government, "in a highly publicized case like this one, such statements have the effect of perpetuating misunderstanding about the obligations of executives at public companies and degrading the public's confidence in law enforcement and respect for the law. A three-year prison sentence will have the beneficial effect of disabusing the public of the defendant's misinformation." (*Id.* at 4:17–21.)

The government is correct that this has been a "highly publicized case," but this publicity cuts squarely against the government's argument. The general public, and particularly executives in Silicon Valley and elsewhere, are fully versed in the nearly six-year ordeal (beginning with Brocade's internal investigation) that has cost Mr. Reyes his reputation, livelihood, mental health, family stability, a significant percentage of his personal assets, and ultimately, his freedom. If anyone beyond the parties to this case took notice of the press release cited by the government—or, even less likely, still remembers it—the ensuing prosecution, trial, conviction, sentencing, appeal, retrial, second conviction, and now resentencing, are more than enough to "disabus[e] the public" of the alleged "misinformation."

**F.      The Government's Recommended 37-Month Sentence Would Result in Unwarranted Sentence Disparities.**

The government rightly concedes that a sentence within its proposed Guideline range of 324–405 months "would result in a significant disparity among sentences for defendants convicted of similar conduct." (U.S. Sent. Mem. at 2:2–4.) But the government makes no

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

6.

DEF.'S OBJ. & RESPONSE TO UNITED
STATES' SENTENCING MEM.
CR06-00556 CRB

1   showing to justify its conclusion that a 37-month term of imprisonment would eliminate (or even

2   significantly reduce) the disparities between Mr. Reyes and similarly situated defendants.  (*See*

3   *id.* at 2:5–12, 3:18–4:1.)  Indeed, although the government cites Mr. Reyes's collection of

4   sentences in related cases, it fails to explain how a 37-month sentence would comport with

5   § 3353(a)(6) when no defendant in a backdating prosecution has received a term of

6   imprisonment exceeding 24 months.  (*See* Def.'s Sent. Mem. at 33:9–34:20 & n.24 (collecting

7   sentences of other backdating defendants).)  For example, while Mr. Reyes recognizes certain

8   dissimilarities between himself and co-defendant Stephanie Jensen (*e.g.*, his position as CEO of

9   Brocade and her position as VP of Human Resources), unwarranted disparities would result if

10  Mr. Reyes receives a term of imprisonment more than 18-times greater than Ms. Jensen's two-

11  month sentence.  (*See id.* at 33:19–34:20.)

12        **G.**      **The Government's Recommended $33 Million Fine Is Excessive in light of Mr. Reyes's $12.5 million payment to Brocade.**

13        The government recommends that the Court impose a fine of $33 million, arguing that

14  only the maximum fine authorized by statute "would re-enforce the seriousness of the offense

15  and promote respect for the law."  (*See* U.S. Sent. Mem. at 5:6–18.)[7]  Mr. Reyes respectfully

16  submits that imposing a fine more than double the $15 million imposed in 2008 lacks merit for

17  three reasons.  (*See also* Def.'s Sent. Mem. at 35:22–37:3.)

18        First, the government correctly acknowledges the Court's prior decision not to impose

19  the statutory maximum fine "because of the 'possibility that there will be civil actions seeking

20  reimbursement of nearly $90 million that has been incurred by Brocade.'"  (U.S. Sent. Mem.

21  at 5:10–12 (quoting RT, Sentencing (Jan. 16, 2008), at 14:9–14).)  But the government's

22  assertion that the "intervening settlement of the civil action between Brocade and the defendant

23  has eliminated that possibility" is nonsensical.  (*Id.* at 5:12–13.)  The fact that Mr. Reyes paid

24  $12.5 million from his personal assets to settle the derivative action, which Brocade voluntarily

25

---

26  [7] The government's recommendation that the Court impose restitution in the amount of $37.1 million

27  incorporates by reference its prior briefing.  (*See* U.S. Sent. Mem. at 5:19–23.)  Mr. Reyes responds in kind by referring the Court to his opposition to the government's prior request for restitution.  (*See* Def.'s

28  Loss Response (Dkt. No. 1183) at 24:1–26:6.)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

7.

DEF.'S OBJ. & RESPONSE TO UNITED
STATES' SENTENCING MEM.
CR06-00556 CRB

1  accepted as consideration for the fees and costs it incurred, supports a *reduction* in the $15

2  million fine imposed in 2008—not an increase of more than 100% to $33 million.

3       Second, as shown in Mr. Reyes's sentencing memorandum, a fine of $15 million would

4  be entirely disproportionate in comparison to the fines imposed on the most similarly situated

5  backdating defendants.  (*See* Def.'s Sent. Mem. at 36:17–37:3.)  A fine of $33 million would

6  only exacerbate that disparity.

7       Third, and also discussed in Mr. Reyes's sentencing memorandum, a fine of $15 million

8  or more fails to account for the lack of evidence supporting a finding of "pecuniary loss inflicted

9  upon others as a result of the offense" (18 U.S.C. § 3572(a)(3)) or any "need to deprive the

10 defendant of illegally obtained gains from the offense" (*id.* § 3572(a)(5)).  (*See* Def.'s Sent.

11 Mem. at 36:8–16.)

12 **III.    CONCLUSION**

13       For the reasons set forth above and in Mr. Reyes's sentencing memorandum, he

14 respectfully requests that the Court exercise its discretion to impose a significant downward

15 variance from the Guideline range, impose the minimum possible term of supervised release,

16 make no order of restitution, and impose a fine substantially below $15 million.

17 Dated:    June 21, 2010                    COOLEY LLP

18

19                                          _____/s/_____

20                                          NEAL J. STEPHENS

21                                          Attorneys For Defendant
                                           GREGORY L. REYES

22 862880/HN

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

8.

DEF.'S OBJ. & RESPONSE TO UNITED
STATES' SENTENCING MEM.
CR06-00556 CRB