COOLEY LLP
STEPHEN C. NEAL (170085)
(nealsc@cooley.com)
NEAL J. STEPHENS (152071)
(nstephens@cooley.com)
SCOTT D. DEVEREAUX (146050)
(devereauxsd@cooley.com)
KATHLEEN H. GOODHART (165659)
(kgoodhart@cooley.com)
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA  94306-2155
Telephone:  (650) 843-5000
Facsimile:   (650) 857-0663

Attorneys for Defendant
GREGORY L. REYES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | Case No. CR06-00556 CRB |
|---|---|
| Plaintiff, | **DEFENDANT GREGORY L. REYES'S PRINCIPAL SENTENCING MEMORANDUM** |
| v. | |
| GREGORY L. REYES, | Date:        June 24, 2010 |
| Defendant. | Time:        10:00 a.m. |
| | Dept.:       Courtroom 8, 19th Floor |
| | Judge:       Hon. Charles R. Breyer |
| | Trial Date:  February 22, 2010 |

**TABLE OF CONTENTS**

PAGE

I.     INTRODUCTION ................................................................................................. 1

II.    BACKGROUND .................................................................................................. 2

       A.     Personal Characteristics .......................................................................... 2

       B.     Court's Offense Level Calculations in 2008 ........................................... 2

III.   APPLICABLE SENTENCING GUIDELINES AND LEGAL STANDARDS ................. 3

       A.     Guidelines Manual .................................................................................. 3

       B.     Evidentiary Standards in Finding Facts Supporting Enhancements ....... 4

       C.     Applicable Legal Standards for Sentencing After Reversal and Remand ............. 5

IV.    SUMMARY OF MR. REYES'S SENTENCING POSITION AND RESPONSES
       TO FINAL PRESENTENCE INVESTIGATION REPORT ......................................... 5

V.     APPLICATION OF SPECIFIC ENHANCEMENTS UNDER THE
       SENTENCING GUIDELINES ............................................................................. 7

       A.     A Sentencing Enhancement for Loss Remains Inappropriate in this Case. ........... 7

       B.     The Court Should Again Decline to Increase Mr. Reyes's Offense Level
              Based on the Number of Victims of His Offense Conduct. .................... 7

       C.     The Court Should Again Decline to Apply a Sophisticated-Means
              Enhancement. .......................................................................................... 8

       D.     The Court Should Not Apply a Four Level Enhancement for Mr. Reyes's
              Role in the Offense. ................................................................................ 9

              1.     Mr. Reyes's acquittal on the conspiracy charge undermines a
                     finding that he was a leader or organizer of a criminal activity
                     involving five or more participants. ............................................ 9

              2.     Mr. Reyes was not the leader or organizer of an "otherwise
                     extensive" criminal activity .................................................... 12

              3.     Enhancements for holding a position as an officer of a public
                     company and for the authority that Mr. Reyes held by virtue of his
                     position account serve to punish him twice for the same conduct. ........... 15

       E.     The Court Should Not Apply an Enhancement for Obstruction of Justice. .......... 17

VI.    A DOWNWARD VARIANCE FROM THE GUIDELINE RANGE IS
       APPROPRIATE BASED ON THE SPECIFIC FACTS IN THIS CASE. ...................... 18

       A.     The Guideline Range Substantially Overstates the Seriousness of the
              Offense. ................................................................................................ 19

       B.     The Adjusted Offense Level, if Enhancements Other than the Public-Offer
              Enhancement Are Applied, Significantly Overstates the Seriousness of the
              Offense. ................................................................................................ 20

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

i.

DEFENDANT GREGORY L. REYES'S
PRINCIPAL SENTENCING MEMORANDUM
CR06-00556 CRB

1

**TABLE OF CONTENTS**
(CONTINUED)

2

PAGE

3
C.    Mr. Reyes's Family Circumstances Have Changed and He Requests that

4
the Court Consider Recent Events in Imposing His Sentence. ............................ 21

VII.   CONSIDERATION OF THE FACTORS IN 18 U.S.C. § 3553 SUPPORT A

5
BELOW GUIDELINES SENTENCE. .............................................................. 22

6
A.    Nature and Circumstances of the Offense and History and Characteristics

7
of the Defendant (18 U.S.C. § 3553(a)(1)) ............................................. 23

1.    Nature of the Offense ..................................................... 24

8
2.    Mr. Reyes's Personal History and Characteristics ................................. 27

9
B.    The Purposes of Sentencing Under 18 U.S.C. § 3553(a)(2) Are Satisfied

10
With a Below Guidelines Sentence ........................................................ 28

1.    The Need to Reflect the Seriousness of the Offense, Respect for the

11
Law, and Just Punishment for the Offense (18 U.S.C.

12
§ 3553(a)(2)(A)) ................................................................... 28

2.    General Deterrence (18 U.S.C. § 3553(a)(2)(B)) .................................... 30

13
3.    Specific Deterrence (18 U.S.C. § 3553(a)(2)(C)) .................................. 31

14
C.    The Kinds of Sentences Available (18 U.S.C. § 3553(a)(3)) ................................ 32

15
D.    The Need to Avoid Unwarranted Sentence Disparities (18 U.S.C.

§ 3553(a)(6)) ..................................................................... 33

16
E.    The Need to Provide Restitution (18 U.S.C. § 3553(a)(7)) ................................. 34

17
VIII.  RESTITUTION IS NOT WARRANTED IN THIS CASE, AND ANY

CRIMINAL FINE SHOULD BE REDUCED FROM THE $15 MILLION

18
IMPOSED IN THE FIRST SENTENCING. .......................................................... 35

19
A.    There Is No New Evidence To Justify a Departure from the Court's Prior

Conclusion that an Award of Restitution Is Inappropriate .................................... 35

20
B.    There Are Changed Circumstances Justifying a Reduction in the $15

21
Million Fine Previously Imposed ........................................................... 35

22
IX.    CONCLUSION .............................................................................. 37

23

24

25

26

27

28

ii.

1

**TABLE OF AUTHORITIES**

2

**PAGE**

3

**CASES**

4

*City of Westland Police & Fire Retirement System v. Sonic Solutions,*

5

   No. C 07-05111 CW, 2009 WL 942182 (N.D. Cal. Apr. 6, 2009) ........................................ 26

6

*Gall v. United States,*
   552 U.S. 38 (2007) ........................................................................................... 22, 23, 29, 30

7

*Koon v. United States,*

8

   518 U.S. 81 (1996) .................................................................................................................. 19

9

*United States v. Adelson,*

10

   441 F. Supp. 2d 506 (S.D.N.Y. 2006) .............................................................. 22, 23, 29, 30

11

*United States v. Ameline,*
   409 F.3d 1073 (9th Cir. 2005) ............................................................................................. 21

12

*United States v. Argo,*

13

   No. 07-CR-00683 (S.D.N.Y. Jan. 29, 2008) ....................................................................... 33

14

*United States v. Berger,*
   587 F.3d 1038 (9th Cir. 2009) ............................................................................................... 4

15

*United States v. Booker,*

16

   543 U.S. 220 (2005) ............................................................................................................... 22

17

*United States v. DeGovanni,*

18

   104 F.3d 43 (3d Cir. 1997) ..................................................................................................... 15

19

*United States. v. Emmenegger,*
   329 F. Supp. 2d 416 (S.D.N.Y. 2004) ................................................................................. 31

20

*United States v. Garcia-Guizar,*

21

   234 F.3d 483 (9th Cir. 2000) ............................................................................................... 5, 6

22

*United States v. Gerhardt,*

23

   No. 07CR00175 (E.D. Mo. Oct. 17 & 23, 2008) ................................................................. 33

24

*United States v. Harper,*
   33 F.3d 1143 (9th Cir. 1994) ................................................................................................. 11

25

*United States v. Hopper,*

26

   177 F.3d 824 (9th Cir. 1999) ................................................................................................... 5

27

*United States v. Jordan,*

28

   256 F.3d 922 (9th Cir. 2001) ................................................................................................... 4

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

iii.

**DEFENDANT GREGORY L. REYES'S**
**PRINCIPAL SENTENCING MEMORANDUM**
**CR06-00556 CRB**

**TABLE OF AUTHORITIES**
**(CONTINUED)**

PAGE

*United States v. Kelly*,
   993 F.2d 702 (9th Cir. 1993)............................................................... 15

*United States v. Link*,
   122 F. Supp. 2d 907 (N.D. Ill. 2000) .................................................. 22

*United States v. Litchfield*,
   959 F.2d 1514 (10th Cir. 1992)........................................................... 15

*United States v. Luca*,
   183 F.3d 1018 (9th Cir. 1999)............................................................. 10

*United States v. Martin*,
   278 F.3d 988 (9th Cir. 2002) .............................................................. 15

*United States v. Menyweather*,
   447 F.3d 625 (9th Cir. 2006).............................................................. 21

*United States v. Milne*,
   384 F. Supp. 2d 1309 (E.D. Wis. 2005)............................................. 27

*United States v. Montano*,
   250 F.3d 709 (9th Cir. 2001)................................................................ 8

*United States v. Parish*,
   308 F.3d 1025 (9th Cir. 2002)............................................................. 18

*United States v. Parris*,
   573 F. Supp. 2d 744 (E.D.N.Y. 2008) ............................................... 22

*United States v. Rapal*,
   146 F.3d 661 (9th Cir. 1998)................................................................ 5

*United States v. Reese*,
   2 F.3d 870 (9th Cir. 1993).................................................................. 21

*United States v. Reyes*,
   577 F.3d 1069 (9th Cir. 2009)......................................................... 9, 13

*United States v. Ruff*,
   535 F.3d 999 (9th Cir. 2008).............................................................. 27

*United States v. Sclamo*,
   997 F.2d 970 (1st Cir. 1993) .............................................................. 22

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

iv.

DEFENDANT GREGORY L. REYES'S
PRINCIPAL SENTENCING MEMORANDUM
CR06-00556 CRB

TABLE OF AUTHORITIES
(CONTINUED)

PAGE

*United States v. Sorin*,
   No. 06CR00723 (E.D.N.Y. Oct. 20, 2009) ............................................................. 33

*United States v. Starnes*,
   583 F.3d 196 (3d Cir. 2009) .................................................................................... 15

*United States v. Thomas*,
   510 F.3d 714 (7th Cir. 2007) ................................................................................... 15

*United States v. Thornton*,
   511 F.3d 1221 (9th Cir. 2008) ................................................................................. 16

*United States v. Treacy*,
   No. 08-CR-366 (S.D.N.Y. Sept. 2, 2009) .......................................................... 33, 36

*United States v. Treadwell*,
   593 F.3d 990 (9th Cir. 2010) ..................................................................................... 4

*United States v. Whitehead*,
   532 F.3d 991 (9th Cir. 2008) ................................................................................... 27

*United States v. Whitmore*,
   35 Fed. App'x 307 (9th Cir. 2002) .......................................................................... 20

*Weiss v. Amkor Technology, Inc.*,
   527 F. Supp. 2d 938 (D. Ariz. 2007) ...................................................................... 27


STATUTES

18 U.S.C.
   § 3553 .......................................................................................... 2, 21, 22, 23
   § 3553(a) ....................................................................................... 1, 2, 22, 32
   § 3553(a)(1) .......................................................................................... *passim*
   § 3553(a)(2) ............................................................................................. 27, 28
   § 3553(a)(2)(A) ........................................................................................ 28, 30
   § 3553(a)(2)(B) ............................................................................................... 30
   § 3553(a)(2)(C) ............................................................................................... 31
   § 3553(a)(3) ............................................................................................. 23, 32
   § 3553(a)(6) ............................................................................................. 33, 34
   § 3553(a)(7) ............................................................................................. 23, 34
   § 3572(a)(3) ................................................................................................... 36
   § 3663A ......................................................................................................... 35

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

v.

DEFENDANT GREGORY L. REYES'S
PRINCIPAL SENTENCING MEMORANDUM
CR06-00556 CRB

**TABLE OF AUTHORITIES**
**(CONTINUED)**

PAGE

28 U.S.C.
    § 994(j) ................................................................................................................ 33

**OTHER AUTHORITIES**

United States Sentencing Guidelines Manual (Nov. 2009)
    § 2B1.1 .......................................................................................................... 7, 8, 35
    § 2B1.1(b)(2) ........................................................................................................ 7
    § 2B1.1(b)(17)(A) ............................................................................................ 2, 21
    § 3B1.1 ...................................................................................................... *passim*
    § 3B1.1(a) ............................................................................................................ 9
    § 3B1.3 .............................................................................................................. 10
    § 3C1.1 .............................................................................................................. 18
    § 3C1.1(A) ........................................................................................................ 17
    § 3D1.1 ................................................................................................................ 3
    § 3D1.3 ................................................................................................................ 3
    § 5E1.2 .............................................................................................................. 36
    § 5E1.2(d) .......................................................................................................... 35
    § 5E1.2(d)(1) ...................................................................................................... 37
    § 5Fl.1 .............................................................................................................. 32
    § 5K2.0 .............................................................................................................. 18

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

vi.

DEFENDANT GREGORY L. REYES'S
PRINCIPAL SENTENCING MEMORANDUM
CR06-00556 CRB

## I.     INTRODUCTION

Following retrial, Mr. Reyes again stands before this Court to be sentenced for offenses first charged nearly four years ago, in August 2006.  Over these years, through the indictment, first trial, appeal and reversal, SEC action, multiple civil actions, and now a second trial, Mr. Reyes has been subjected to significant personal, professional, and financial burdens even before undertaking the sentence this Court will impose on June 24th.  The memoranda and letters submitted in the first sentencing fully and accurately portrayed Mr. Reyes as devoted to his family, tireless in his work for Brocade and its employees, steadfast in friendship, and exceedingly generous of his time and resources.  While the fundamental character that Mr. Reyes has demonstrated throughout his life remains unchanged today, the interval since the first sentencing in January 2008 has presented challenges to Mr. Reyes and his family that merit the Court's reconsideration of the sentence previously imposed.

For the reasons set forth below, Mr. Reyes respectfully submits that a downward variance from the Guidelines range—particularly if the Court imposes the same enhancements as it did in the first sentencing—is justified and will more than adequately serve the purposes of sentencing pursuant to 18 U.S.C. § 3553(a).  As explained below, Mr. Reyes's principal sentencing position is that the enhancements imposed in the first sentencing (with the exception of the public-officer enhancement) should not be imposed here, leading to an Adjusted Offense Level within Zone C; under this calculation, Mr. Reyes would be eligible for a non-custodial sentence, and requests that the Court consider imposing such a sentence.  However, in the event the Court's Guidelines calculations do not change, Mr. Reyes requests that the Court impose a sentence comprising (1) a term of imprisonment well below the Guideline range of 18–24 months, followed by (2) the minimum term of supervised release, (3) no order of restitution, and (4) a substantial reduction in the $15 million fine imposed in the first sentencing.[1]

---

[1] Mr. Reyes further requests that the Court again permit him to remain released on the same terms as were imposed upon pretrial release, as the Court allowed following the first sentencing, (Reporter's Transcript ("RT") of Sentencing Proceedings (Jan. 16, 2008), at 49:21–23), and as the United States Probation Office has recommended in its current Presentence Investigation Report.  (*See* Presentence Investigation Report (Jun. 10, 2010), "Sentencing Recommendation" at 3 ("Voluntary Surrender").)  Mr. Reyes opposes the government's request that he be detained at the conclusion of the June 24, 2010 sentencing

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

1.

DEFENDANT GREGORY L. REYES'S
PRINCIPAL SENTENCING MEMORANDUM
CR06-00556 CRB

## II.    BACKGROUND

### A.    Personal Characteristics

Mr. Reyes incorporates by reference, and requests that the Court review, the background and personal characteristics discussions in his principal brief in the first sentencing.  (*See* Def.'s Position re Sentencing & Response to Presentence Report (Dkt. No. 797) at 8:2–9:21; 12:23–19:3.)

### B.    Court's Offense Level Calculations in 2008

When Mr. Reyes was sentenced in January 2008, the Court applied a base offense level of seven.  (RT, Sentencing (Jan. 16, 2008) at 4:1–9.)  The Court applied a four level enhancement because Mr. Reyes was an officer of a publicly traded company and the offense involved a violation of securities laws  (*id.* at 4:19–22; Order Re Sentencing Guidelines ("Order," Dkt. No. 737) at 11:20–24 & 14:4–5),[2] and a four-level enhancement after finding that Mr. Reyes was an organizer or leader of an extensive criminal activity (RT, Sentencing, at 4:24–5:4; Order at 11:26–12:28 & 14:5–6).  Further, the Court applied a two level enhancement for obstruction of justice relating to Mr. Reyes's declaration filed in support of Stephanie Jensen's motion for severance.  (RT, Sentencing, at 5–9.)

The Court declined to impose an enhancement for "sophisticated means," finding that the "scheme was not significantly more complex than a case involving routine securities fraud."  (*Id.* at 9:25–10:5; Order at 13:1–15.)  The Court further declined to apply a six level enhancement for Mr. Reyes's conduct harming more than 250 victims because the government did not establish that his conduct caused any actual loss.  (Order at 11:5–18.)

With an adjusted offense level of 17, the Court found the applicable Sentencing Guidelines range was 24 to 30 months.  (RT, Sentencing, at 17:20–21.)  After considering the factors under 18 U.S.C. § 3553 and the parties' arguments, the Court imposed a sentence of 21

---

hearing (*see* Dkt. No. 1192), and will file separately his opposition to the government's motion.

[2]  Mr. Reyes concedes that the public officer enhancement, currently at U.S.S.G. § 2B1.1(b)(17)(A), is applicable here.  However, as discussed below, respectfully urges the Court not to impose a duplicative enhancement under section 3B1.1 for an aggravating role in the offense.

2.

months, which was "lower than that of the low end of the sentencing guidelines." (*Id.* at 46:14–

15.)  The Court explained the driving factors for imposing a below guidelines sentence as

follows (*see id.* at 47:18–19):

> Mr. Reyes is a good and decent individual, if anything has come loud and clear in the over 400 letters that I have received it is that he has led a life dedicated to trying to help others.  He has done so unselfishly.  He has done so anonymously.  He has done so with the highest purpose of helping others.  And I think that it's only fair to give some recognition for his extraordinary acts of charity.
>
> . . .
>
> He is generous.  He is generous in a way that sets, I think, the very—he's the essence of what you want to see in an individual from whom much has been given; he gives much.  And he does so in an anonymous way.
>
> . . .
>
> [T]here [should] be some recognition, some recognition . . . of the fact that he, I believe, has been changed by this experience, as he himself has said.
>
> . . .
>
> And I think, also, that before this incident occurred he acted in a way, with respect to others, to try to help the less-advantaged people.  That is one of the nobler purposes of charity.  And it ought to be recognized, to some extent, by the sentencing court.

(*Id.* at 46:16–23, 47:3–6 & 47:8–17.)

Mr. Reyes's conduct since the last sentencing only reinforces the Court's

observations.  Based on the verdict in the retrial, which included an acquittal on the

Count 1 conspiracy charge, as well as the sentencing materials submitted in 2007–2008,

Mr. Reyes respectfully submits that a substantial reduction in the sentence imposed in

2008 is warranted.

### III.   APPLICABLE SENTENCING GUIDELINES AND LEGAL STANDARDS

#### A.   Guidelines Manual

Mr. Reyes recognizes that under the Sentencing Guidelines' grouping rules (sections

3D1.1–3D1.3), the 2009 Sentencing Guidelines govern the base offense level in this case.

(Order at 3:15–19; RT (Jan. 16, 2008) at 4:1–9.)  However, Mr. Reyes reinstates his objection[3]

---

[3] Mr. Reyes objected to the Proposed Presentence Investigation Report (disclosed on May 20, 2010) that the current Guideline Manual (Nov. 2009) should be used "as there are no *ex post facto* issues."  His

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

3.

DEFENDANT GREGORY L. REYES'S
PRINCIPAL SENTENCING MEMORANDUM
CR06-00556 CRB

1   that the same *ex post facto* issues that existed during his first sentencing—by virtue of using any

2   Guidelines effective after the January 25, 2003 revisions—still remain today.[4]  For present

3   purposes, the 2009 Sentencing Guidelines govern the base offense level in this case.

**B.**    **Evidentiary Standards in Finding Facts Supporting Enhancements**

5         A district court typically applies the preponderance-of-the-evidence standard when

6   finding facts pertinent to sentencing, but when a sentencing factor has an "'*extremely*

7   *disproportionate* effect on the sentence relative to the offense of conviction,' due process may

8   require a district court to apply a heightened standard."  *United States v. Berger*, 587 F.3d 1038,

9   1047 (9th Cir. 2009) (internal citations omitted).  As this Court previously held, the clear and

10   convincing standard is appropriate in this case under the "totality of the circumstances" test set

11   forth in *United States v. Jordan*, 256 F.3d 922, 928 (9th Cir. 2001).  (Order at 2:11–24.)[5]

12         As discussed in Mr. Reyes's opposition to the government's request for a loss-

13   enhancement, the clear-and-convincing standard would apply to any finding of loss by virtue of

14   the extremely disproportionate effect of such an enhancement would have on the Adjusted

15   Offense Level.  (*See* Def.'s Response to the Government's Memorandum of Law in Support of

16   Its Position on Loss and Restitution ("Loss Response") (Dkt. No. 1183) at 11:6–12:14 & nn. 5–

17   9.)  In addition, Mr. Reyes submits that it would comport with due process to apply the clear-

---

[4] The Court previously stated the November 1, 2001 Sentencing Guidelines should apply to Count Five, the November 1, 2002 Sentencing Guidelines to Counts Six, Nine, and Ten, and the Sentencing Guidelines effective November 1, 2007 to all remaining counts. (Order at 3:3–4 & 3:12–14.)  However, the grouping rule in the Guidelines mooted the need to apply different Guideline Manuals. (*See* RT (Jan. 16, 2008) at 15:16–21 (defendant's position regarding *ex post facto* considerations for some counts was well-taken, although moot due to grouping of the counts); Sentencing Minutes (Dkt. No. 815).)

objection is referenced in the final Presentence Investigation Report (disclosed on June 10, 2010) in the Addendum at ¶ 3 (Def.'s Obj. No. 1).

[5] Under this analysis, the court should consider: (1) whether the enhanced sentence falls within the maximum sentence for the crime alleged in the indictment; (2) whether the enhanced sentence negates the presumption of innocence or the prosecution's burden of proof for the crime alleged in the indictment; (3) whether the facts offered in support of the enhancement create new offenses requiring separate punishment; (4) whether the increased sentence is based on the extent of a conspiracy; (5) whether an increase in the number of offense levels is less than or equal to four; and (6) whether the length of the enhanced sentence more than doubles the length of the sentence authorized by the initial sentencing guideline range in a case where the defendant would otherwise have received a relatively short sentence. *Jordan*, 256 F.3d at 928; *see United States v. Treadwell*, 593 F.3d 990, 1000 (9th Cir. 2010) (citing *Jordan*'s totality of the circumstances test).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

4.

DEFENDANT GREGORY L. REYES'S
PRINCIPAL SENTENCING MEMORANDUM
CR06-00556 CRB

1  and-convincing standard if the Court applies enhancements beyond the public-officer

2  enhancement (discussed below) that would result in an Adjusted Offense Level increase from 11

3  to 17 or more.  *See, e.g.*, *United States v. Hopper*, 177 F.3d 824, 833 (9th Cir. 1999) (seven-level

4  increase in offense level, more than doubling the applicable sentencing range, satisfied

5  extremely disproportionate impact test).

6        **C.**     **Applicable Legal Standards for Sentencing After Reversal and Remand**

7        Except in circumstances not applicable here, Ninth Circuit case law does not allow for an

8  increased sentence following a retrial after appellate reversal of the original judgment.

9  Specifically, when resentencing a defendant on remand after a reversal and retrial, a more severe

10  sentence than was previously imposed may be presumed to be "vindictive" unless the record

11  reflects "objective information . . . justifying the increased sentence."  *United States v. Rapal*,

12  146 F.3d 661, 663 (9th Cir. 1998) (internal quotations and citations omitted).  Where the

13  government fails to provide such additional, objective information—as it failed to do in this

14  retrial—an increased sentence is impermissible.  *See United States v. Garcia-Guizar*, 234 F.3d

15  483, 490 (9th Cir. 2000) (where reasons justifying increased sentence do not affirmatively

16  appear in record, "a presumption arises that a greater sentence has been imposed for a vindictive

17  purpose" (internal citations and quotations omitted)).

18  **IV.**    **SUMMARY OF MR. REYES'S SENTENCING POSITION AND RESPONSES TO FINAL PRESENTENCE INVESTIGATION REPORT**

19

20        Mr. Reyes agrees with the recommendation in the Presentence Investigation Report

21  disclosed by the United States Probation Office on June 10, 2010 ("PSR"), that the Court

22  consider a downward variance from the applicable Guidelines range for the reasons stated

23  therein and discussed in greater detail below.  (*See* PSR at ¶ 86, pg. 20.)  Mr. Reyes further

24  agrees with the PSR's recommendation that no restitution be ordered, based on the Court's prior

25  rulings on the issues of loss and number-of-victims enhancements.  (*See id.*, Sentencing

26  Recommendation at pg. 2.)

27        However, Mr. Reyes respectfully disagrees with the PSR's recommendation to impose

28  enhancements for aggravating role (+4) and obstruction of justice (+2) (*see id.* at ¶¶ 34–43,

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

5.

**DEFENDANT GREGORY L. REYES'S
PRINCIPAL SENTENCING MEMORANDUM
CR06-00556 CRB**

1    pgs. 10–11), and submits that the calculated Adjusted Offense Level ("AOL") of 17, within Zone

2    D, and advisory Guidelines range of 24–30-months imprisonment overstates the seriousness of

3    the offense and would not well serve the purposes of sentencing.  For the same reasons, Mr.

4    Reyes respectfully disagrees with the recommendation that the Court consider an upward

5    variance from the 24–30-month range.  (*Id.* at ¶ 84, pg. 19.)  As further discussed below, Mr.

6    Reyes also submits that the PSR's recommendation for a $15 million fine is excessive and

7    unnecessarily punitive in light of changed circumstances since the first sentencing in 2008.

8         Based on his objections to the PSR's recommended sentencing enhancements for

9    aggravating role (+4) and obstruction of justice (+2), both of which are discussed in detail below,

10   Mr. Reyes submits that the appropriate AOL is 11, with a range of 8–14 months.  Because an

11   AOL of 11 is within Zone C, Mr. Reyes respectfully requests that the Court consider the

12   alternatives to imprisonment set forth in the Guidelines.

13        Alternatively, if the Court does *not* impose the two-level enhancement for obstruction of

14   justice, but *does* impose an aggravating-role enhancement, the resulting AOL would be as

15   follows: for a four-level aggravating-role enhancement, an AOL of 15, which is within Zone D

16   with range of 18–24 months; and for a two-level aggravating-role enhancement, an AOL of 13,

17   which is within Zone D with range of 12–18 months.  Under either of these scenarios, Mr. Reyes

18   requests that the Court vary downward from the respective advisory Guidelines ranges.

19        Finally, if the Court applies the same sentencing enhancements as it did in 2008, leading

20   to an AOL of 17 with a range of 24–30 months, Mr. Reyes respectfully requests that the Court

21   exercise its discretion to vary downward from the Guidelines range.  For the reasons discussed

22   below, Mr. Reyes submits that a term of imprisonment substantially below the 21-month term

23   imposed in 2008 is warranted on resentencing.

24        Regardless of the enhancements applied and resulting AOL, Mr. Reyes requests that the

25   Court (1) impose the minimum possible term of supervised release, (2) again decline to order

26   restitution, and (3) substantially reduce the $15-million fine imposed in 2008.

27

28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

6.

DEFENDANT GREGORY L. REYES'S
PRINCIPAL SENTENCING MEMORANDUM
CR06-00556 CRB

**V.     APPLICATION OF SPECIFIC ENHANCEMENTS UNDER THE SENTENCING GUIDELINES**

    **A.     A Sentencing Enhancement for Loss Remains Inappropriate in this Case.**

Mr. Reyes previously submitted to this Court his Loss Response (Dkt. No. 1183). Pending the Court's ruling on that issue, Mr. Reyes incorporates here by reference his position regarding why a loss enhancement continues to be inappropriate.  In particular, Mr. Reyes notes his previously filed objection to the argument, raised for the first time in the government's reply brief, that the Court calculate a $1.9 million loss based on purported "gain" from Mr. Reyes's sale of allegedly backdated options.  (*See generally* Def.'s Objection to United States' Reply Mem. in support of Its Position on Loss and Restitution (Dkt. No. 1190).)

    **B.     The Court Should Again Decline to Increase Mr. Reyes's Offense Level Based on the Number of Victims of His Offense Conduct.**

The government suggests that the Court should apply an enhancement based on the number of victims under section 2B1.1(b)(2).  Specifically, if the offense: (A) involved ten or more victims or was committed through mass-marketing, a court may increase by two levels; (B) involved 50 or more victims, a court may increase by four levels; or (C) involved 250 or more victims, a court may increase by six levels.  U.S.S.G. § 2B1.1(b)(2).  While the government previously argued that Mr. Reyes's "conduct harmed more than 250 investors because he deprived them of their right to truthful and accurate financial statements," the Court held that the Guidelines "do not permit an enhancement merely because an investor is deprived of his right to truthful information."  (Order at 11:6–8 & 11:12–13; RT (Jan. 16, 2008) at 10:9–11 ("there were no victims within the meaning of that term as it is used in the sentencing guidelines for enhancement purposes") & 16:25–17:1 (overruling objection on number of victims).)  The Court noted that the term "victim" is narrowly defined in the Guidelines as "any person who sustained any part of the *actual loss* determined under subsection (b)(1)."  (Order at 11:12–15, citing U.S.S.G. § 2B1.1, cmt. n.1 (emphasis in original).)

In support of its most recent attempts at proving loss, the government provided no new argument or information addressing what the Court previously deemed to be a significant problem with the government's loss argument in Mr. Reyes's first sentencing.  (*See generally,*

1   Loss Memorandum; Order at 5:23–25.)  Namely, the government simply fails to provide a

2   reliable method of identifying whether and which investors suffered *actual loss* based on the

3   decline in stock price on January 7, 2005 (*see* Loss Response at 24–26); absent such a finding,

4   the Guidelines do not provide for a victim enhancement, U.S.S.G. § 2B1.1, cmt. n.1.  For these

5   reasons, the Court should again decline to apply a number-of-victims enhancement.

6   **C.    The Court Should Again Decline to Apply a Sophisticated-Means**
    **Enhancement.**

7

8          As previously stated in this Court's Order, sophisticated means refer to "especially

9   complex or especially intricate offense conduct pertaining to the execution or concealment of an

10  offense."  (Order at 13:3–5, citing U.S.S.G. § 2B1.1, App. Note 8(B).)  Under that standard, the

11  Court has already held that "the scheme was *not* significantly more complex than a case

12  involving routine securities fraud" (*id.* at 13:6–7 (emphasis in original)) and that such

13  enhancement should be reserved for outliers (*id.* at 13:11).  In so holding, the Court rejected the

14  government's argument that "the high level of accounting knowledge required to carry out the

15  scheme" and "manipulation of corporate records" sufficed as sophisticated means.  (*Id.* at 13:8–

16  11 ("[T]hose two characteristics are common in even routine securities fraud cases."); *see* RT

17  (Jan. 16, 2008) at 17:3–6 ("It appears to the Court that the defendant's scheme was not atypical

18  of other securities fraud offenses, and did not entail sophisticated means.").)

19         The evidence in the 2010 trial gives no reason for the Court to depart from its previous

20  conclusion that this case "involved little more than printing out a price chart of Brocade's stock

21  prices and picking a day with [a] relatively low stock price on which to grant the options and

22  then doing the requisite paperwork."  (Order at 13:12–14.)  Indeed, such conduct is

23  distinguishable from "[c]onduct such as hiding assets or transactions, or both, through the use of

24  fictitious entities, corporate shells, or offshore financial accounts" which "ordinarily indicates

25  sophisticated means."  U.S.S.G. § 2B1.1, App. Note 8(B); *see United States v. Montano*, 250

26  F.3d 709, 715 (9th Cir. 2001) (reversing enhancement because defendant's activities were "crude

27  and very basic" and there was no evidence that his conduct involved efforts at concealment

28  beyond concealment inherent in the offense).  Because there was no additional evidence at this

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

8.

DEFENDANT GREGORY L. REYES'S
PRINCIPAL SENTENCING MEMORANDUM
CR06-00556 CRB

trial that Mr. Reyes engaged in any intricate or complex conduct, that the nature of the offense conduct involved any different conduct than presented at the first trial, nor that Mr. Reyes utilized any especially complex methods to conceal his conduct, the Court should again reject this enhancement.

**D.     The Court Should Not Apply a Four Level Enhancement for Mr. Reyes's Role in the Offense.**

In the first sentencing, the Court applied a four-level enhancement under Guidelines Manual section 3B1.1(a) because Mr. Reyes was a leader of a criminal activity and the criminal activity was otherwise extensive.  (Order at 11:26–12:2; RT (Jan. 16, 2008) at 4:24–5:4 (finding role in the offense enhancement appropriate for reasons set forth in Order).)  This section provides that based on the defendant's role in the offense, a court may apply:

> (a) a four-level increase if the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive;
>
> (b) a three-level increase if the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive; or
>
> (c) a two-level increase if the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b).

U.S.S.G. § 3B1.1.

Mr. Reyes submits that no increase should be imposed for his role in the offense, but that *if any* enhancement is applied, it should be for only two levels under sub-section (c).  In light of Mr. Reyes's acquittal on the conspiracy charge, the Ninth Circuit opinion in *Reyes*, and the findings in Stephanie Jensen's sentencing, the Court should reconsider whether Mr. Reyes was a leader of a criminal activity, that he "oversaw the participation of" Stephanie Jensen, and that the criminal activity was extensive.  (*See* Order at 11:25–12:28.)

**1.     Mr. Reyes's acquittal on the conspiracy charge undermines a finding that he was a leader or organizer of a criminal activity involving five or more participants.**

The jury's conclusion that there was no "criminal partnership" between Mr. Reyes and Ms. Jensen weakens the suggestion that there were five or more participants under section 3B1.1.  Under this section, "[a] 'participant' is a person who is *criminally responsible* for the

1    commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1, App. Note 1

2    (emphasis added); *United States v. Luca*, 183 F.3d 1018, 1024 (9th Cir. 1999) ("Unknown

3    facilitators of crimes will not be considered criminally responsible participants."). As this Court

4    has recognized, this enhancement requires finding not only the existence of five or more

5    participants, but that the defendant "exercised control over at least one other participant,

6    regardless of whether the offense was 'otherwise extensive.'" (*United States v. Jensen*, Order Re

7    Sentencing Guidelines ("Jensen Order") (Dkt. No. 851) at 12:16–17.) Mr. Reyes submits that

8    the tie of alleged criminal responsibility to Ms. Jensen (and Human Resources) has been severed

9    due to the conspiracy acquittal, and that there is reason to re-evaluate whether the participant

10   findings can be sustained.

11           While the Court previously found that Mr. Reyes oversaw the participation of Ms.

12   Jensen, this finding is inconsistent with the jury's conspiracy acquittal because the verdict

13   indicates that the jury found no "criminal partnership" or "agreement" between them to commit

14   any of the substantive crimes for which Mr. Reyes was convicted. (Jury Instructions (Dkt. No.

15   1158) at 19–20.) Indeed, Ms. Jensen is the *only person* that the Court previously identified as a

16   participant for sentencing purposes (Order at 12:11–12) and, importantly, the sole alleged co-

17   conspirator throughout the trial (RT, Vol. 16 (Mar. 22, 2010) at 2823:1–3 ("[T]here was a

18   conspiracy, in this instance, with [Stephanie] Jensen . . . And the conspiracy is an agreement or

19   partnership to commit a crime."); Jury Instructions at 19–20). In fact, the Court—during Ms.

20   Jensen's first sentencing—explained that the aggravating role "enhancement for Reyes was

21   appropriate *because* he organized Jensen's involvement." (Jensen Order at 12:20–21 (emphasis

22   added).)[6] It is not enough to use a "but for" test (*i.e.*, the crime would not have been committed

23   but for defendant's participation); there must be evidence that the defendant exercised some

---

[6] Following the Ninth Circuit remand for resentencing without the obstruction of justice enhancement, the Court otherwise applied the same enhancements as it did in Ms. Jensen's first sentencing. (Jensen RT (Jan. 6, 2010) at 2:21–3:1.) While the Court stated there was a two level adjustment for the "role in the offense" (*id.* at 2:25), this enhancement was for an "abuse of trust" under section 3B1.3. (Jensen Order at 12:26–28 (no aggravating role enhancement under section 3B1.1); 15:23–17:17 (abuse of trust enhancement appropriate under section 3B1.3); and 23:7–8 (summarizing the same).)

1    control over others involved or was responsible for organizing others for the purpose of carrying

2    out the crime.  *United States v. Harper*, 33 F.3d 1143, 1151 (9th Cir. 1994).

3        The government also relied heavily on Ms. Jensen as the conduit through which Mr.

4    Reyes conducted the alleged conspiracy, depicting him as the mastermind who "could not have

5    committed this crime [of backdating] without [Ms. Jensen's] help."  (RT, Vol. 3 (Feb. 22, 2010)

6    at 270:25–271:1; *see also id.* at 270:16–20.)  And although it argued in closing that a conspiracy

7    conviction was warranted because the jury could "see the existence of the plan" and "see the

8    existence of the agreement, in the coordinated way in which people [went] about their activities

9    with regard to the stock options at Brocade" (RT, Vol. 16 (Mar. 22, 2010) at 2823:25–2824:2),

10   the jury did not find any such coordination established a backdating conspiracy.[7]  Due to the

11   Court's focus on Ms. Jensen as the sole criminally responsible person controlled by Mr. Reyes

12   during the first sentencing, Mr. Reyes requests that the Court consider the effect of his

13   conspiracy acquittal on this finding.

14       In addition, the Court should evaluate whether employees in Human Resources can

15   properly be considered "criminally responsible" under section 3B1.1 without a "criminal

16   partnership" with Ms. Jensen.  The government relied heavily on witness testimony that

17   Stephanie Jensen directed her department to backdate options for Mr. Reyes and, thus, they were

18   participants in the fraud through Ms. Jensen.  (RT, Vol. 3 (Feb. 22, 2010) at 271:18–21 ("these

19   witnesses will tell you that Stephanie Jensen directed them to look back over the stock

20   performance history and select or highlight . . . the low prices").  Based on the evidence

21   presented by the government at trial, the *only way* that Mr. Reyes could have possibly led or

22   organized HR is through Ms. Jensen.  (*See, e.g.*, *id.* at 271:10–11 ("You will learn that Stephanie

23   Jensen would come to these witnesses to begin the option-granting process.") & 271:18–21

24

25   [7] Mr. Reyes anticipates that the government will argue that the outcome regarding five or more
     participants should not change because Mr. Reyes was convicted on Count Two (Scheme to Defraud) and
26   involved others in his scheme.  However, a scheme to defraud is distinct from a conspiracy.  (RT, Vol. 16
     (Mar. 22, 2010) at 2824:3 (stating in the government's closing that "a conspiracy is different from a
27   scheme").)  There is nothing inherent in the Count Two conviction from which the Court can imply a
     finding by the jury that there were five or more participants nor that he controlled any one participant for
28   the purposes of section 3B1.1.  (Jury Instructions (Dkt. No. 1158) at 22; Verdict Form (Dkt. No. 1165).)

Cooley LLP
Attorneys At Law
Palo Alto

11.

DEFENDANT GREGORY L. REYES'S
PRINCIPAL SENTENCING MEMORANDUM
CR06-00556 CRB

1   ("Next, these witnesses will tell you that Stephanie Jensen directed them to look back over the

2   stock performance history and select or highlight, with a yellow highlighter, the low prices.").)

3   Further, the evidence makes clear that these witnesses rarely, if ever, had direct interactions with

4   Mr. Reyes on any HR-related topic, let alone conversations about stock options.  (*See, e.g.*, RT,

5   Vol. 8 (Mar. 2, 2010) at 1309:8–13 (Beyer never discussed stock options, option pricing, or

6   accounting for options with Mr. Reyes).)  Because the government's only connection to Mr.

7   Reyes and the HR employees who supposedly carried out his backdating was through Ms.

8   Jensen, the Court should re-evaluate whether any HR employee can be deemed a criminally-

9   responsible participant under section 3B1.1.

10        Moreover, this Court has already determined that Ms. Jensen did not control any

11   "participants" for sentencing purposes, finding "there [wa]s no evidence that Jensen managed

12   any other criminally responsible person (that is, a person who not only backdated option grants

13   but did so with the requisite mens rea)."  (Jensen Order at 12:21–23; *see id.* at 12:9

14   (enhancement not appropriate because she did not manage or supervise one or more other

15   participants).  The Court also recognized that the government's theory in Ms. Jensen's case—

16   which was argued no differently against Mr. Reyes—"was that there were no criminally

17   responsible parties other than Jensen and Reyes."  (*Id.* at 12:24–25.)  Mr. Reyes's prosecution

18   provided no additional evidence to change the finding regarding whether "Jensen exercised

19   control over at least one other participant."  (*Id.* at 12:16–17.)

20        The lack of criminal partnership between Mr. Reyes and Ms. Jensen and the

21   government's reliance on Ms. Jensen as the conduit for Mr. Reyes's crimes undermines finding

22   individuals in the Human Resources department as "participants" in a criminal activity.  Mr.

23   Reyes submits that the Court's previous finding must be revisited.

24             **2.      Mr. Reyes was not the leader or organizer of an "otherwise extensive"
                        criminal activity.**

25

26        In light of changed factors, the Court should also reconsider its finding that there was an

27   otherwise extensive criminal activity, which the Court found applicable by focusing on the

28   number of knowing "participants" and "unwitting outsiders."  (Order at 12:17–25.)  Neither the

Cooley LLP
Attorneys At Law
Palo Alto

12.

Defendant Gregory L. Reyes's
Principal Sentencing Memorandum
CR06-00556 CRB

1   conduct of the Finance Department, Board of Directors, nor Human Resources Department

2   should be considered to have been unwitting outsiders or participants such that their conduct

3   made Mr. Reyes's criminal activity "otherwise extensive."

4          The Court should not consider the Finance Department as having been unwittingly duped

5   by Mr. Reyes based on the Ninth Circuit opinion in *United States v. Reyes*.  *See* 577 F.3d 1069,

6   1076 (9th Cir. 2009) (noting "[s]tatements made to the FBI by responsible employees in the

7   Finance Department during the FBI's investigation established that Finance Department

8   executives knew about the backdating").  It simply was not the case that the "Finance

9   Department did not know of the backdating, and thus [was] powerless to get the accounting

10  right" (*id.*), and thus the government was foreclosed from repeating such an argument again at

11  this trial.  The government, importantly, did not assert that Finance was part of the conspiracy

12  with Mr. Reyes.[8]  Simply put, the evidence in this trial does not allow for a finding that

13  employees in the Finance Department were criminally responsible participants or unwitting

14  outsiders to Mr. Reyes's criminal activity.

15         Similarly, the Board of Directors cannot be deemed unwitting participants because the

16  evidence at this trial showed that the Audit Committee backdated options to themselves—

17  namely, the April 17, 2001 grant.  (*See* RT, Vol. 10 (Mar. 4, 2010) at 1806:14–22, 1813:5–23,

18  1821:5–25, 1822:14–1823:4, 1831:2–5, & 1838:22–1840:3 (Miotto unable to conclude that Apr.

19  17, 2001 director grants were not backdated); *see also* Trial Ex. 2375 (unanimous written

20  consent dated Apr. 17, 2001, granting options to Audit Committee members Dempsey, Leslie,

21  Neiman, and Sonsini); Trial Ex. 2382 (minutes of a board meeting, dated Apr. 20, 2001,

22  indicating that no board meeting took place on Apr. 17, 2001).)  At the same time, the Board

23

24

25

26  [8] In fact, the government downplayed the importance of what key players in the Finance Department
    knew.  (*See* RT, Vol. 16 (Mar. 22, 2010) at 3016:2–8 ("The defense has insisted that these e-mails show
27  that [CFO] Mike Byrd knew about the backdating at Brocade.  Okay.  But what Mike Byrd knew and did
    not know about the backdating scheme does not help you answer the real question of what Mr. Reyes
28  knew . . . . Nor is what Mike Byrd knew particularly relevant.").)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

13.

DEFENDANT GREGORY L. REYES'S
PRINCIPAL SENTENCING MEMORANDUM
CR06-00556 CRB

1    members were never argued to be criminally responsible in any shape or form for backdating,

2    nor were they alleged to be part of the conspiracy.[9]

3        The conduct of employees in the Human Resources department in carrying out stock

4    option administration also does not make Mr. Reyes's criminal activity extensive.  In and of

5    itself, the stock-options program at Brocade was not illegal (Jury Instructions at 37 (backdating

6    is not a violation of securities laws)), and the legitimate activities performed by HR in

7    administering stock options have no bearing on Mr. Reyes's criminal activity.[10]  Indeed, stock

8    options were issued as part of a routine corporate practice—authorized by statute and by

9    Brocade's bylaws—and was itself a legitimate form of granting compensation to employees.

10   And even despite the government's broad statements that "Greg Reyes backdated" (*see*

11   *generally*, RT, Vol. 3 (Feb. 22, 2010) at 270:16–20), Mr. Reyes was not convicted of simply

12   selecting grant dates with hindsight.  The "crime" at issue here was that grant dates had not been

13   properly disclosed to investors and, as a result, certain accounting charges were not disclosed in

14   financial statements and SEC filings.  There is no doubt that HR itself had no involvement with

15   preparing financial statements and SEC filings, nor ensuring that these documents contained

16   proper compensation charges.  As such, HR employees should not be considered unwitting

17   participants in Mr. Reyes's criminal activity, as they were merely carrying out their duties and

18   responsibilities relating to stock option administration.

19       Finally, increasing Mr. Reyes's sentence based on an authority that was the result of his

20   corporate leadership position (which was entirely lawful activity) undermines the intent of the

21

22   _____

     [9] Again, the government downplayed the importance of what the Board knew about options.  (*See* RT,
23   Vol. 16 (Mar. 22, 2010) at 3045:1–4 ("[Y]ou really do not have a solid record to divine what the board at
     Brocade did and did not know.  And what the board members did and did not know does not help you
24   answer the real question of what Mr. Reyes knew . . . .").)

25   [10] The stock options and practices put at issue by the government constituted only a small portion of the
     stock option administration process at Brocade and the overall responsibilities of HR.  Most of the
26   activities relating to the administration of the stock options program—such as selecting the option price,
     determining grant amounts, collecting and verifying personnel data for grant documentation, preparing
27   grant minutes, and correcting errors in grant documentation—were routine and legitimate actions that any
     company granting options would perform.  The offense conduct in this case involved participation by the
28   HR department that was no more "extensive" than its regular and legitimate job responsibilities.

Cooley LLP
Attorneys At Law
Palo Alto

14.

Defendant Gregory L. Reyes's
Principal Sentencing Memorandum
CR06-00556 CRB

1   Sentencing Commission that a defendant have led a criminal organization,[11] and is thus

2   tantamount to an increase for simply being an officer of Brocade.  In *United States v.*

3   *DeGovanni*, the court found that defendant's "sergeant-status in the police department as an

4   overall supervisor of other police officers . . . was not enough to substantiate an enhancement for

5   *active* supervision of *other members* of th[at] conspiracy."  104 F.3d 43, 46 (3d Cir. 1997)

6   (emphasis in original).  Corporate leadership does not equal criminal leadership.  *United States v.*

7   *Litchfield*, 959 F.2d 1514, 1523 (10th Cir. 1992) (leadership enhancement improper, in part,

8   where "defendant might be termed an organizer or leader of the mining operation, [but] that

9   operation was not itself criminal activity"); *DeGovanni*, 104 F.3d at 46 ("[T]he mere fact that

10  [defendant] was the[] workplace supervisor[] is not enough to render him more culpable *for*

11  *purposes of the conspiracy* .") (emphasis in original); *see also United States v. Starnes*, 583 F.3d

12  196, 217 (3d Cir. 2009) (district court "properly gave no weight to [defendant's] formal job title

13  in assessing whether he should be characterized as an organizer"); *see* U.S.S.G. § 3B1.1, App.

14  Note 3.

15          **3.      Enhancements for holding a position as an officer of a public
                company and for the authority that Mr. Reyes held by virtue of his
16              position account serve to punish him twice for the same conduct.**

17          "Impermissible double counting occurs only when one part of the Guidelines is applied

18  to increase a defendant's punishment on account of a kind of harm that has already been fully

19  accounted for by application of another part of the Guidelines."  *United States v. Martin*, 278

20

21  _____

    [11] The aggravating role enhancement is intended to "increase the offense level based upon the size of a
22  *criminal organization* (*i.e.*, the number of participants in the offense) and the degree to which the
    defendant was responsible for committing the offense."  U.S.S.G. § 3B1.1, App. Note Background
23  (emphasis added).  Without having proven there was a conspiracy, there is no organization that can
    properly be deemed "criminal" for sentencing purposes, unless that criminal organization is Brocade
24  itself.  Further, without "leading" a criminal organization, there is no comparison for the "degree to which
    [he] was responsible" for the crimes underlying conviction, which is contemplated by the Sentencing
25  Guidelines.  *See* U.S.S.G. § 3B1.1, App. Note Background.  The Guidelines did not contemplate an
    aggravating role when there is only one defendant's offense conduct.  *See United States v. Thomas*, 510
26  F.3d 714, 725 (7th Cir. 2007) (distinguishing the leadership enhancement as being applied for defendant's
    "leadership role in the *conspiracy*" compared to his leadership role as the chairman of the committee
27  through which he perpetrated the crime); *United States v. Kelly*, 993 F.2d 702, 705 (9th Cir. 1993) ("The
    leadership enhancement addresses a somewhat different concern, namely [defendant's] role within the
28  group of coconspirators.").

1   F.3d 988, 1004 (9th Cir. 2002) (internal quotations and citations omitted); *United States v.*

2   *Thornton*, 511 F.3d 1221, 1227–28 (9th Cir. 2008) (same).  In evaluating the issue of double

3   counting in the first sentencing, the Court stated that the aggravating role enhancement was

4   intended to punish Mr. Reyes for "bring[ing] in, either knowingly or unknowingly, wittingly or

5   unwittingly, a number of individuals in order to . . . accomplish the purposes which he set out to

6   do." (RT (Jan. 16, 2008) at 16:13–16.)  Mirroring the evidence supporting the conspiracy count

7   in the first trial, the Court held that the aggravating role enhancement applied *because* Mr. Reyes

8   "could not have done [it] alone."  (*Id.* at 16:12–13.)  The jury's inability to find a conspiracy and

9   the evidence showing senior finance officers' and board members' awareness of backdating

10  suggest that the previous double counting finding should be revisited.

11      In applying the aggravating role enhancement, the Court focused primarily on Mr.

12  Reyes's exercise of authority to backdate employee grants by signing board minutes,

13  management letters, and certifications.  (Order at 12:10–12.)[12]  As discussed in the previous

14  section, however, the authority to grant employee options was granted to Mr. Reyes by virtue of

15  his position at Brocade as CEO.  In fact, the Board approved this delegation of authority to him,

16  as CEO, and the company's bylaws allowed for such authority.

17      As discussed above, Mr. Reyes submits that the offense conduct here does not qualify for

18  the aggravating role enhancement.  However, even if the government were correct that this

19  offense conduct could technically qualify for the enhancement under the terms of the Guidelines'

20  language, the enhancement would be duplicative as applied on these facts: Securities fraud

21  necessarily involves the making of false or materially misleading statements or omissions in

22  SEC filings, and if the offense conduct here were to qualify for the enhancement, it is hard to

23  imagine an officer of a publicly traded company who would *not* face an aggravating-role

24  _____

25  [12] Although the Court focused heavily on decision making authority, there are a number of factors to be considered in determining whether the defendant was a leader of a criminal activity.  They include: the

26  exercise of decision making authority; the nature of participation in the commission of the offense, the recruitment of accomplices; the claimed right to a larger share of the fruits of the crime; the degree of

27  participation in planning or organizing the offense; the nature and scope of the illegal activity; and the degree of control and authority exercised over others.  (Order at 12:4–9, citing U.S.S.G. § 3B1.1, App.

28  Note 4.)

Cooley LLP
Attorneys At Law
Palo Alto

16.

Defendant Gregory L. Reyes's
Principal Sentencing Memorandum
CR06-00556 CRB

1     enhancement based on five or more witting or unwitting participants or an extensive criminal

2     activity.  A public company's processes for complying with SEC filings necessarily involves

3     five or more persons, and could always be deemed "extensive" because information must be

4     compiled from different departments, consolidated, and reviewed prior to filing.  If "unwitting"

5     involvement of any person is the standard for a participant or extensiveness, then any officer is

6     automatically subjected to an aggravating role enhancement on top of the public officer

7     enhancement.  If the offense conduct here were to qualify, a finding of five participants and/or

8     extensiveness would be inevitable for any public officer committing securities fraud—even

9     though the public-officer enhancement would already apply.  What separates this case from

10    those in which the Sentencing Commission intended the enhancement to apply is that Mr. Reyes

11    did not orchestrate a conspiracy (*i.e.*, lead a *criminal organization*), as evidenced by the jury's

12    verdict.

13         **E.      The Court Should Not Apply an Enhancement for Obstruction of Justice.**

14             Notwithstanding the Court's previous decision to impose an enhancement for obstruction

15    of justice, Mr. Reyes respectfully submits that this enhancement should not be applied on

16    resentencing.  In light of the changed circumstances in the retrial, the record does not support a

17    finding that Mr. Reyes "willfully obstructed or impeded, or attempted to obstruct or impede, the

18    administration of justice with respect to the investigation, prosecution, or sentencing of the

19    instant offense of conviction" (U.S.S.G. § 3C1.1(A)) in submitting the declaration relating to co-

20    defendant Stephanie Jensen's motion for severance (*see* Dkt. No. 763-1).  Specifically, Mr.

21    Reyes respectfully requests that the Court reconsider this issue given that the declaration was

22    prepared and submitted by Mr. Reyes's previous counsel before the first trial.  Mr. Reyes

23    retained new counsel for his defense in the retrial and the Court has had the opportunity to

24    observe the defense try this case.  The Court properly excluded the declaration from trial (*see*

25    RT, Pretrial Conf. (Feb. 16, 2010) at 5:21–14:16), and in light of the defense in this trial, Mr.

26    Reyes respectfully submits that circumstances have changed sufficiently to reconsider the

27    enhancement.

28

Cooley LLP
Attorneys At Law
Palo Alto

17.

Defendant Gregory L. Reyes's
Principal Sentencing Memorandum
CR06-00556 CRB

Moreover, the defense continues to view the most plausible interpretation of the declaration as the description by the United States Probation Office in the Final PSR disclosed on December 28, 2007, which concluded in the Addendum at pg. 2, ¶ 11, that "the statements were recollections of past discussions with Jensen and were not intended to posit a statement on the more general issue of backdating, it is not clear that his intent was to mislead the court or that his statements were wholly inconsistent with later statements made by counsel." This interpretation of the declaration was further supported by Jan Little, Ms. Jensen's defense counsel. (*See* Letter from Jan Little to U.S. Probation Officer Cheryl L. Simone (Dec. 26, 2007), at 1 ("Because I submitted [Mr. Reyes's] declaration on behalf of Ms. Jensen, I thought it important to make clear to you that I believed at the time it was submitted, and I still believe, that the declaration is accurate. I also do not believe the Declaration is inconsistent with any positions taken by Mr. Reyes' counsel at his trial."), attached as Ex. U to the Declaration of Neal J. Stephens in support of Def.'s Principal Sentencing Memorandum ("Stephens Decl.").) As provided by the Commentary to section 3C1.1, Mr. Reyes requests that the Court consider that "inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice." U.S.S.G. § 3C1.1, App. Note 2 ("Limitations on Applicability of Adjustment").

For these reasons, Mr. Reyes respectfully requests that the Court reconsider its prior conclusion that an enhancement should be applied for willful obstruction of justice.

## VI.   A DOWNWARD VARIANCE FROM THE GUIDELINE RANGE IS APPROPRIATE BASED ON THE SPECIFIC FACTS IN THIS CASE.

"A district court may depart from the applicable Guideline range if it finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" *United States v. Parish*, 308 F.3d 1025, 1029 (9th Cir. 2002) (citing U.S.S.G. § 5K2.0 (policy statement)). The court should depart downward because: (1) the adjusted offense level substantially overstates the seriousness of Mr. Reyes's

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

18.

DEFENDANT GREGORY L. REYES'S
PRINCIPAL SENTENCING MEMORANDUM
CR06-00556 CRB

1  backdating offenses; (2) the combined effect of the enhancements produces an unreasonable and

2  unduly harsh result; and (3) family circumstances warrant leniency from this Court.

3       **A.      The Guideline Range Substantially Overstates the Seriousness of the
                   Offense.**

4

5       Mr. Reyes respectfully requests that the Court should apply a downward variance in the

6  adjusted offense level because his conduct was outside of the "heartland" of typical securities

7  fraud cases.  The Sentencing Commission "intend[ed] the sentencing courts to treat each

8  guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each

9  guideline describes.  When a court finds an atypical case, one to which a particular guideline

10 linguistically applies but where the conduct significantly differs from the norm, the court may

11 consider whether a departure is warranted."  U.S.S.G. Ch. 1 Pt. A, 4(b); *see Koon v. United*

12 *States*, 518 U.S. 81, 95 (1996) (first question that a sentencing court should ask in considering a

13 departure is whether the case is outside the Guidelines' heartland and make it a special or

14 unusual case).

15      While the government—for the first time in three years of litigation—claimed that Mr.

16 Reyes was the primary intended beneficiary of Brocade's backdating, this stands starkly in

17 contrast to the government's arguments for motive at the first trial.  (RT, Pretrial Conf. (Feb. 16,

18 2010) at 82:8–83:1.)  But the primary evidence of this new motive was simply the government

19 expert's suppositions regarding the "correct" grant dates for certain option grants made to Mr.

20 Reyes, based on which the expert further testified, based also on supposition, regarding the

21 amount that Mr. Reyes supposedly gained from the sale of Brocade stock.  (*See* RT, Vol. 11

22 (Mar. 8, 2010) at 2056:23–2062:4 (Fujimoto testimony).)  Tellingly, no fact witness testified in

23 support of the government's personal profit theory.

24      The conclusion that this case falls outside the heartland of securities-fraud offenses is

25 further supported by the fact that the only evidence presented for "personal gain" related to an

26

27

28

Cooley LLP
Attorneys At Law
Palo Alto

19.

**Defendant Gregory L. Reyes's
Principal Sentencing Memorandum
CR06-00556 CRB**

1    option outside of the indictment period.[13]  The government elicited testimony that "of the options

2    that Mr. Reyes received in the period 2000 through 2004," the only options exercised were the

3    40,000 shares granted on November 19, 1999, for a pre-tax gain of $2,995,626.  (RT, Vol. 11

4    (Mar. 8, 2010) at 2062:25–2063:21, 2065:8–2066:19 & 2067:15–22.)  The government indicated

5    that it intended to show that Mr. Reyes, by merely having the option to purchase shares in 1999,

6    understood that stock would be more valuable if expenses were lower and revenue was higher.

7    (*See* RT (Feb. 19, 2010) at 241:13–17 & 242:1–25.)  To the extent that the government sought to

8    put into evidence that Mr. Reyes benefitted from the 1999 stock grant, the parties previously

9    stipulated and the Court instructed the jury, that "Mr. Reyes sold a significant amount of

10   Brocade stock on dates between 2000 and 2004."  (RT, Vol. 10 (Mar. 4, 2010) at 1975:7–8.)

11       The government presented no new documentation or testimony from any fact witnesses

12   that proved up this motive to personally profit.  To the contrary, witnesses testified that Brocade

13   used stock options to attract and retain talented employees, to remain competitive with other

14   companies, and to benefit its employees.[14]  The fact that stock options were used to reward rank

15   and file employees is one of the reasons that this case is atypical of the body of securities-fraud

16   cases.  *See United States v. Whitmore*, 35 Fed. App'x 307, 321 (9th Cir. 2002) (unpublished

17   disposition) (applying downward departure as a case outside of the heartland of bank fraud cases

18   where defendant was motivated to enhance the bank and eventually save it, not harm it).

19       **B.    The Adjusted Offense Level, if Enhancements Other than the Public-Offer
            Enhancement Are Applied, Significantly Overstates the Seriousness of the**
20          **Offense.**

21       As the Guidelines themselves recognize, "[t]here may be cases in which the offense

22   level . . . substantially overstates the seriousness of the offense.  In such cases, a downward

23   _____

24   [13] Mr. Reyes further notes that the portion of the indictment on which the government relied to justify its
     "personal profit" theory relates directly and exclusively to the mail-fraud charges in Counts 3 and 4 that
     the government voluntarily dismissed before the first trial.  (*See* Indictment (Dkt. No. 23) at ¶ 16.)

25   [14] *See, e.g.*, RT, Vol. 7 (Mar. 1, 2010) at 1142:9–12 (Beyer testimony that "[a]ttracting and retaining
     employees was a real issue for the company.  In that case, my belief was that there was an economic
26   value to the company, to be had by having people off of the job market [by recruiting and retaining
     employees using stock options]."); *id.* at 1236:11–14 (Beyer testimony that Brocade, like other "[h]igh-
27   technology companies in Silicon Valley," used options "as a tool to not only attract top-level technicians,
     engineers, finance professionals, to the companies, but also to retain them.").

28

1   departure may be warranted." U.S.S.G. § 2B1.1, App. Note 19(C). Based on the factors

2   discussed in this memorandum, if the Court imposes enhancements beyond the public-officer

3   enhancements under section 2B1.1(b)(17)(A), Mr. Reyes submits that the Adjusted Offense

4   Level (*i.e.*, any Adjusted Offense Level greater than 11) will substantially overstate the

5   seriousness of offense. *See United States v. Reese*, 2 F.3d 870, 895 (9th Cir. 1993) ("There is, of

6   course, such a thing as impermissible double counting. It occurs where one part of the

7   Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has

8   already been fully accounted for by the application of another part of the Guidelines. In practical

9   terms, this means that impermissible double counting is to be found where one Guidelines

10  provision 'is akin to a 'lesser included offense' of another,' yet both are applied.") (internal

11  citation omitted).

12      **C.     Mr. Reyes's Family Circumstances Have Changed and He Requests that the
             Court Consider Recent Events in Imposing His Sentence.**
13

14          Post-*Booker*, "courts can justify consideration of family responsibilities[] [as] an aspect

15  of the defendant's 'history and characteristics' [under section 3553(a)(1)] for reasons extending

16  beyond the Guidelines." *United States v. Menyweather*, 447 F.3d 625, 634 (9th Cir. 2006). In

17  the first sentencing, the Court stated that downward variances for extraordinary family

18  circumstances "generally involve situations where the defendant is an irreplaceable caretaker of

19  children, elderly, or a seriously ill family member." (RT (Jan. 16, 2008) at 12:6–14.) Further

20  stating that the extent of an appropriate variance "serves to protect those family members from

21  the defendant's prolonged incarceration[,]. . . [i]n the Court's opinion, Mr. Reyes ha[d] not

22  demonstrated that he is the only person who can tend to issues raised by his family's

23  circumstances." (*Id.* at 12:14–19.) Given changed circumstances, Mr. Reyes requests that the

24  Court consider the needs of his family in exercising its discretion under section 3553. *See*

25  *Menyweather*, 447 F.3d at 634 (district courts have discretion to consider "family ties and

26  responsibilities" as mitigating factors) (quoting *United States v. Ameline*, 409 F.3d 1073, 1093

27  (9th Cir. 2005) (emphasis omitted)).

28

Cooley LLP
Attorneys At Law
Palo Alto

21.

DEFENDANT GREGORY L. REYES'S
PRINCIPAL SENTENCING MEMORANDUM
CR06-00556 CRB

In particular, and as the Court was previously apprised through numerous letters to the Court, any sentence in this case should account for the tremendous impact that the prosecution and looming sentence has had on both of Mr. Reyes's children, Greg Jr., (now 16 years old) and Rebecca (now 12).  (*See* Appendix C to Decl. of Ronda McKaig in Support of Admin. Mot. to File Selected Letters to the Court Under Seal (Dkt. No. 688).)  As illustrated by the updated letters submitted under seal, Mr. Reyes's children have continued to bear a heavy burden—and in nearly every respect that burden and its ill effects have grown more severe since the last sentencing.  (*See* Letter from John Pina, Ph.D., Letter from Julie Collier, Ph.D., and Letter from Penny Reyes, attached as Exs. R, S, and P, respectively, to Stephens Decl.)  Mr. Reyes urges the Court to read these letters and consider the risk that Greg Jr.'s and Rebecca's well-being "will deteriorate if defendant is incarcerated."  *United States v. Sclamo*, 997 F.2d 970, 973–74 (1st Cir. 1993) (affirming downward departure where there is "evidence of an exceptional kind of relationship and an exceptional risk of harm to a child if that relationship is broken," citing to psychologist's reports at sentencing hearing); *United States v. Link*, 122 F. Supp. 2d 907, 909 (N.D. Ill. 2000) (applying downward departure for extraordinary family circumstances where defendant had "an unusual bond [with his emotionally fragile son] from a psychiatric point of view," citing psychiatrist's conclusions).

## VII. CONSIDERATION OF THE FACTORS IN 18 U.S.C. § 3553 SUPPORT A BELOW GUIDELINES SENTENCE.

Following the decision in *United States v. Booker*, the Sentencing Guidelines are advisory.  543 U.S. 220, 245 (2005).  A district court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," and this range is to be used as an initial benchmark for the sentence.  *Gall v. United States*, 552 U.S. 38, 49 (2007).  While the court must calculate the Guidelines range, it "may not presume that the Guidelines range is reasonable."  *Gall*, 552 U.S. at 39.[15]  As such, the court must "consider all of the § 3553(a)

---

[15] *See also United States v. Adelson*, 441 F. Supp. 506, 515 (S.D.N.Y. 2006) ("But where, as here, the calculations under the guidelines have so run amok that they are patently absurd on their face, a Court is forced to place greater reliance on the more general considerations set forth in section 3553(a), as carefully applied to the particular circumstances of the case."); *United States v. Parris*, 573 F. Supp. 2d

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

22.

DEFENDANT GREGORY L. REYES'S
PRINCIPAL SENTENCING MEMORANDUM
CR06-00556 CRB

factors to determine whether they support the sentence requested by a party." *Gall*, 552 U.S. at 49–50.

Section 3553 of Title 18 provides that a district court shall impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in [sub-section (a)(2)]," namely:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

A district court shall also consider: the nature and circumstances of the offense and the history and characteristics of the defendant; the kinds of sentences available; the sentencing range established by the Sentencing Guidelines; any pertinent policy statements issued by the Sentencing Commission; the need to avoid unwanted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a)(1) & (3)–(7).

## A.    Nature and Circumstances of the Offense and History and Characteristics of the Defendant (18 U.S.C. § 3553(a)(1))

Both the nature and circumstances of Mr. Reyes's offenses and his history and characteristics weigh strongly in favor of a below guideline sentence.  Mr. Reyes was convicted of securities fraud, falsifying company books, records, and accounts, and making false statements to accountants of Brocade—all relating to the failure to take proper accounting charges relating to stock options.  Mr. Reyes was acquitted of conspiracy to commit any of these offenses.

---

744, 751 (E.D.N.Y. 2008) (a court should avoid "the utter travesty of justice that sometimes results from the guidelines' fetish with absolute arithmetic, as well as the harm that guideline calculations can visit on [defendants] if not cabined by common sense") (citing *Adelson*, 441 F. Supp. 2d at 512)).

Cooley LLP
Attorneys At Law
Palo Alto

Defendant Gregory L. Reyes's
Principal Sentencing Memorandum
CR06-00556 CRB

1

### 1.      Nature of the Offense

2    Mr. Reyes was convicted of violating APB 25, an accounting opinion which required a

3    company to record non-cash stock option compensation expenses whenever it granted "in-the-

4    money" stock options.  Prior to Mr. Reyes's indictment, no one had ever been criminally

5    prosecuted for violating APB 25 or failing to disclose non-cash expenses relating to stock

6    options.  As a result, the nature of the offense is relatively new to the legal landscape and

7    although almost three years have passed since the first trial, there were very few executives

8    charged in criminal cases (and even fewer prosecuted successfully) after it was revealed that

9    hundreds of companies had backdated option grants in the 2000–2004 time period, and no

10   criminal cases involving any alleged backdating that would have occurred after the issue became

11   a media event in 2006.

12   Non-cash stock option compensation expenses are accounting entries on a financial

13   statement which are required under Generally Accepted Accounting Principles ("GAAP").  They

14   do not reflect actual cash flow in or out of a company, but reflect an estimate of the value of

15   options at a given moment in time, similar to a company's good will.  The option itself has no

16   cash value unless and until it is exercised; and where, as here, options cannot be exercised for a

17   substantial period of time (typically 1–4 years) after the grant, any estimate based on

18   hypothetical exercise on the date of the grant is at best highly speculative.  Despite Brocade's

19   restatement of over $300 million in non-cash expenses, its cash positions did not change by even

20   one cent as a result of the offense conduct.  Importantly, 95% of the options at issue in Mr.

21   Reyes's case were never exercised, and thus there was never any cash impact in or out of

22   Brocade for those option grants.

23   Testimony during trial demonstrated that Brocade's investors and analysts were primarily

24   concerned with costs impacting a company's cash position and were not concerned with non-

25   cash compensation expenses such as those understated by Brocade.  The government's investor

26   witnesses did not testify that they had actually considered non-cash stock option compensation

27   expenses in deciding to purchase or sell Brocade stock.  (*See* RT, Vol. 12 (Mar. 9, 2010)

28   at 2298:2–5 (Kilgannon did not look at 10-Ks); *id.* at 2298:6–13 (Kilgannon did not look at

Cooley LLP
Attorneys At Law
Palo Alto

24.

Defendant Gregory L. Reyes's
Principal Sentencing Memorandum
CR06-00556 CRB

1   GAAP income statement); *id.* at 2331:25–2332:1 & 2332:24–2333:5 (Ryan did not read 10-Ks,

2   never looked at earnings per share, and never looked at net-income numbers).)  Indeed, the trial

3   testimony of the only finance witness called at trial, Richard Deranleau, established that revenue

4   and the company's true operating condition could be obscured by non-cash expenses.  (RT,

5   Vol. 7 (Mar. 1. 2010) at 1139:15–25 (APB 25 disclosure is "unhelpful to the investors and the

6   investment community" because they "are not seeing the underlying performance" of the

7   company.)  Moreover, analyst reactions to Brocade's January 6, 2005 restatement

8   announcement—each of whom retained their existing buy or hold recommendations—

9   demonstrates that the market did not view the company's earlier omission of APB 25 expenses

10  as material buying or selling decisions.  (*See* Report of Kenneth M. Lehn (Dkt. No. 1184-1), at

11  ¶ 30, pgs. 15–16 (collecting analyst commentary to restatement announcement).)

12          Further, the information that Mr. Reyes was convicted of concealing—indeed, *better*

13  information—was fully disclosed in notes to Brocade's financial statements under FAS 123.

14  Had investors been concerned about the information that Mr. Reyes had "concealed," that

15  information was—and had always been—at their fingertips throughout the period of grants at

16  issue.  This point was confirmed by numerous witnesses.  (See RT, Vol. 8 (Mar. 2, 2010)

17  at 1451:1–9 & 1472:23–1473:23 (Bowie testifies that FAS 123 is more informative disclosure

18  and better piece of information for investors than APB 125); RT, Vol. 6 (Feb. 25, 2010)

19  at 1032:18–21, 1041:3–18 & 1042:4–24 (Deranleau testifies that FAS 123 disclosures in

20  Brocade's SEC filings fully disclosed option expenses); RT, Vol. 12 (Mar. 9, 2010) 2292:17–

21  2293:3 (Kilgannon testifies that stock option expenses disclosed in 10-Ks from 2000–2003

22  indicated how financial statements would have looked after accounting for stock option

23  expenses); *id.* at 2339:2–13 & 2339:22–2340:4 (Ryan testifies that FAS 123 disclosures would

24  have been absorbed into market and factored into Brocade's stock price).)

25          In light of this evidence, the offense conduct here simply does not fall within the realm of

26  common securities fraud conduct, such as artificially inflating stock prices by adding false

27  revenue or hiding cash expenses to meet earnings estimates.  Moreover, Brocade thrived under

28  Mr. Reyes's tenure and under his leadership and with the use of stock options to retain a talented

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

25.

DEFENDANT GREGORY L. REYES'S
PRINCIPAL SENTENCING MEMORANDUM
CR06-00556 CRB

work force, the company grew from approximately one hundred employees to almost 1,300. (*See* RT, Vol. 3 (Feb. 22, 2010) at 280:15–16 ("[I]t's true that Greg Reyes built Brocade into a Silicon Valley success story.")  Even today, Brocade remains a successful company; it continues to provide value to its shareholders and to the public.

Another fact that sets this case apart from the typical corporate fraud case is that APB 25 was widely misapplied by many other companies, especially Brocade's peer companies in the high-tech industry and in the Silicon Valley.  (*See, e.g.*, RT, Vol. 10 (Mar. 4, 2010), at 1856:18–21 (Miotto agrees that "there were a large number of companies that ended up doing restatements as a result of options that had been backdated").)  Over 250 companies launched internal investigations or been the subject of government investigations into options backdating and over 130 companies have restated their financials because of their failure to properly record option expenses under APB 25.  (*See* Testimony Before U.S. Senate Banking Committee (Sep. 6, 2006) at 3, filed as Ex. 7 to Declaration of Ronda J. McKaig (Jan. 10, 2008); *see also* RT, Vol. 12 (Mar. 9, 2010) at 2267:20–2268:3 (reading stipulation that "[a] substantial number of public companies . . . restated their financial reports to recognize additional noncash stock-based compensation.").)  Indeed, the Court has heard testimony by government's own witnesses demonstrating that Brocade was not unique in its misinterpretation of APB 25 generally,[16] nor, as evidence within and without the trial record shows, was Brocade alone in using historical look-backs to price stock options.[17]  *Cf. City of Westland Police & Fire Ret. Sys. v. Sonic*

---

[16] *See, e.g.*, RT, Vol. 10 (Mar. 4, 2010) at 1783:23–24 (Miotto testimony that "I'm not familiar with all the literature.  If I have an issue, I call an expert."); *id.* at 1784:3–8 (Miotto: "Q. I mean, the literature on stock options and how you account for stock options is extensive, and it's elaborate and it's confusing. Would you agree with that?  A. Extensive, and it's elaborate, and sometimes it's confusing."); RT, Vol. 3 at 381:4–382:7 (Bidzos' testimony that VeriSign backdated options and had to restate financials as result); RT, Vol. 12 (Mar. 9, 2010) at 2267:20–2268:3 ("A substantial number of public companies, many of them Silicon Valley technology companies, disclosed in their public filings that they backdated stock options without taking a corresponding compensation charge.  As a result, these companies restated their financial reports to recognize additional noncash stock-based compensation.  Not all relevant details about the stock option granting practices at these companies were disclosed in their public filings." (Stipulation)).

[17] *See* RT, Vol. 8 (Mar. 2, 2010) at 1352:1–1354:16 (cross-examination of Beyer showing intentional backdating at KLA-Tencor); *see generally* Def.'s Mot. for New Trial Pursuant to Rule 33 (Dkt. No. 1176) at 3–10.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

DEFENDANT GREGORY L. REYES'S
PRINCIPAL SENTENCING MEMORANDUM
CR06-00556 CRB

1   *Solutions*, No. C 07-05111 CW, 2009 WL 942182, at *6 (N.D. Cal. Apr. 6, 2009) ("[C]ourts

2   have concluded that APB No. 25 is a complex rule, and that a misapplication of APB No. 25

3   cannot be construed as a glaring example of scienter because the measurement date criteria

4   embodied in APB No. 25 are far from obvious." (internal quotations omitted)); *Weiss v. Amkor*

5   *Tech., Inc.*, 527 F. Supp. 2d 938, 949 (D. Ariz. 2007) ("[T]he accounting rules at issue,

6   specifically APB No. 25, are complex and require accounting expertise and judgment.").

### 2.   Mr. Reyes's Personal History and Characteristics[18]

8          Perhaps the most fundamental factor in any sentencing is the personal history and

9   characteristics of the defendant.[19]  *See* 18 U.S.C. § 3553(a)(1).  Over 300 letters were submitted

10  to the Court in support of Mr. Reyes during the first sentencing, and Mr. Reyes appreciates that

11  the Court took the time to review all of the letters before his initial sentencing.  He respectfully

12  requests that the Court keep those letters in mind as it again considers an appropriate sentence,

13  and hopes that the Court will specifically review Appendix A, a smaller subset of letters that

14  were previously identified as the most important for the Court to review.  (*See* Appendix A

15  attached to the 11/16/07 Declaration of Ronda McKaig.)  These letters describe a man who has

16  lived a life of great purpose, and who has left an impression and positive impact on everyone he

17  has touched.  There is a unifying theme running through these letters—our lives have been made

18  better because of Greg Reyes.  The letters speak of many things, including Mr. Reyes's good

19  character, his compassion, his philanthropy, and devotion to his family.  They tell the story of an

20  ethical businessman and caring employer who inspired people to achieve their goals, took time

---

22  [18] Mr. Reyes will not repeat the entirety of his personal history here, which is contained in his previous
23  sentencing memorandum (filed Jan. 9, 2008 under seal) and the pre-sentence report.  Mr. Reyes does,
    however, wish to bring to the Court's attention certain items relating to this personal characteristics.

24  [19] Courts have recognized that the Guidelines can "fail[] to take into account defendant's positive
    personal characteristics, including his excellent employment record, family ties and community
25  involvement."  *United States v. Milne*, 384 F. Supp. 2d 1309, 1312 (E.D. Wisc. 2005) ("[G]uidelines
    sometimes are insufficiently sensitive to personal culpability").  Mitigating factors that a court may
26  consider include defendant's history of strong employment, family support, and the absence of potential
    risk to the public.  *United States v. Ruff*, 535 F.3d 999, 1001 (9th Cir. 2008); *see also United States v.*
27  *Whitehead*, 532 F.3d 991, 993 (9th Cir. 2008) (court may properly consider, under section 3553(a)(1)–
    (2), that a defendant's crime "[di]d not pose the same danger to the community as many other crimes,"
28  defendant's attempts to building an honorable life, and how defendant's daughter depended on him).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

1   to get to know his employees, and always insisted on doing things with integrity and honesty.

2   They also tell the story of a loving father and a devoted husband, and a man who cares about his

3   community and helps people in need, often silently and without being asked to do so.  They tell

4   the story of a good man, who is deserving of compassion.

5          In addition to the letters previously submitted, Mr. Reyes has submitted to the Court a

6   small collection of additional letters from family, friends, and those who have been touched by

7   Mr. Reyes's selfless and charitable acts after his first sentencing.  (*See* Letters attached as Exs.

8   A–L & N–O to Stephens Decl.)  Through his personal struggles over the past few years, Mr.

9   Reyes has not lost sight of the values he has exemplified all throughout his life.  He has devoted

10  himself to friends going through tragic and difficult times—whether it be waiting days at the

11  hospital during surgeries, being a caretaker in a spouse's absence, sending home cooked meals,

12  and frequently opening up his home to friends and their families to be closer to their loved ones.

13  (*See* Letters from Chip Virnig, Rita Piziali, Jim Weldon, Christopher Childs, and Lorinda Childs,

14  attached as Exs. A, B, C, G & H, respectively, to Stephens Decl.)  In particular, Mr. Reyes's

15  close friend, Ken Virnig, recently died of pancreatic cancer, but Mr. Reyes remained in constant

16  contact throughout this most recent trial and ensured that Mr. Virnig's son Chip was cared for.

17  (*See* Letter from Chip Virnig, attached as Ex. A to Stephens Decl.)  Mr. Reyes visited as often as

18  he could, always making time to take Mr. Virnig to church every week, and encouraged Chip

19  and his father to take the father-son trips they had always dreamed of taking.  (*Id.*)  Without Mr.

20  Reyes's positivity and strength, these trips would never happened; and it is through actions such

21  as these that Mr. Reyes has become a role model and father-figure to those in his life.

22          Mr. Reyes respectfully urges the Court to consider these letters, among others, as a basis

23  for the Court's discretionary exercise of leniency in sentencing.

24   **B.      The Purposes of Sentencing Under 18 U.S.C. § 3553(a)(2) Are Satisfied With
25           a Below Guidelines Sentence.**

        **1.      The Need to Reflect the Seriousness of the Offense, Respect for the
26                Law, and Just Punishment for the Offense (18 U.S.C. § 3553(a)(2)(A))**

27          Section 3553(a)(2)(A) directs a court to consider whether a sentence will sufficiently

28  serve the purposes of reflecting the seriousness of the offense, promoting respect for the law, and

Cooley LLP
Attorneys At Law
Palo Alto

28.

DEFENDANT GREGORY L. REYES'S
PRINCIPAL SENTENCING MEMORANDUM
CR06-00556 CRB

1   providing just punishment for the offense.  A lengthy prison sentence is not necessary to serve

2   these purposes.

3          The Court should consider that Mr. Reyes has already been severely punished as a result

4   of this case.  Mr. Reyes was forced to step down as the CEO and Chairman of Brocade, a

5   company which Mr. Reyes helped build and take public, and he will never again be able to serve

6   as a CEO, officer, or director of a public company, despite his continued desire to work.[20]  Mr.

7   Reyes's good name and reputation have also been irreparably harmed—prior to the options

8   issues at Brocade, he was widely recognized as an honest CEO and a man of impeccable

9   business integrity.  But since the details of his criminal case have played out in numerous major

10  news publications and throughout the legal and business communities, there is no way to undo

11  the notoriety now associated with his name or the automatic association with his name to option

12  backdating.  In Mr. Reyes's case, a below guidelines term of imprisonment and probationary

13  sentence are more than sufficient to afford just punishment for his crimes.  Moreover, the

14  Supreme Court has recognized that even a probationary sentence has a considerable punitive

15  effect on offenders, in addition to special conditions that the sentencing court may impose.  *Gall*,

16  552 U.S. at 48 (offenders on probation are subject to several standard conditions that

17  substantially restrict their liberty and do not enjoy the absolute liberty to which every citizen is

18  entitled); *see also Adelson*, 441 F. Supp. 2d at 514 & 15 (in imposing three and a half year

19  sentence for "egregious" accounting fraud, court noted "an important kind of retribution [under

20

21  [20] While Mr. Reyes will be unable to continue working as an officer in any public company, this has not
    kept him from using his experience and knowledge to assist businesses in need.  For example, Mr. Reyes
22  has helped to save a small business owned by Mike Saldivar, the father of one of his son's friends.  (*See*
    Letter from Mike Saldivar, attached as Ex. D to Stephens Decl.)  Mr. Saldivar was looking at the closure
23  of his business and, on a whim, asked Mr. Reyes if he would be willing to hear his business story.  Mr.
    Reyes, through his determination and with his business acumen, devoted significant time and expense to
24  helping Mr. Saldivar who, ultimately, was able to turn his business around using Mr. Reyes's suggestions
    and with his help.  (*Id.*)  That business today flourishes, and Mr. Saldivar and his entire staff of eight
25  employees (and their families with young children) no longer need to worry about being put out on the
    street.  (*Id.*)  Mr. Reyes has also assisted a friend whose consulting business was destroyed by a Ponzi
26  scheme.  (*See* Letter from William Gutekunst, attached as Ex. E to Stephens Decl.)  Mr. Reyes helped
    Mr. Gutekunst (who was facing financial devastation both for his business and his family) by speaking
27  with banks and attorneys, and supporting Mr. Gutekunst's family until he could get back on his feet.  (*Id.*)
    Mr. Reyes also paid Mr. Gutenkunst's legal fees and continues to assist him with debts today.  (*Id.*)

28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

29.

DEFENDANT GREGORY L. REYES'S
PRINCIPAL SENTENCING MEMORANDUM
CR06-00556 CRB

1    section 3553(a)(2)(A)] may be achieved through the imposition of financial burdens," and that

2    this sentence was "all that was necessary to achieve the purposes" of (a)(2)).

3                    **2.      General Deterrence (18 U.S.C. § 3553(a)(2)(B))**

4            General deterrence aims to deter others from committing crimes.  A lengthy prison

5    sentence for Mr. Reyes is not necessary to deter others from failing to properly account for in-

6    the-money stock options.  Legal and accounting requirements relating to stock options have

7    changed significantly since the time of Mr. Reyes's offense conduct, and offenses like those Mr.

8    Reyes was convicted of are simply not likely to happen with frequency in the future.  The

9    confusion and ambiguities that existed concerning APB 25 from 2000 to 2004 (and how to

10   properly comply with it) no longer exist because it has since been abandoned and replaced by

11   FAS 123R.  Now, all options are required to be expensed based on their fair value, regardless of

12   the exercise price, on the date of the grant.  Moreover, Sarbanes-Oxley mandates a two-day

13   reporting requirement for options granted to Section 16 officers.  With this requirement,

14   companies are less likely to use hindsight in granting options to officers and the potential for

15   accounting improprieties is decreased without the ability to look back.

16           Further, company executives are undoubtedly aware of the risks of improper options

17   accounting based on all the media that stock options (and individuals like Mr. Reyes) have

18   received.  Also, there is "considerable evidence that even relatively short sentences can have a

19   strong deterrent effect on prospective 'white collar' offenders." *Adelson*, 441 F. Supp. 2d at 514.

20   From Mr. Reyes's case and the small number of backdating prosecutions that have occurred,

21   officers of publicly traded companies recognize the potential for substantial penalties if the rules

22   relating to stock options are not followed.  *See Gall*, 552 U.S. at 54 (quoting district court

23   opinion that "'a sentence of imprisonment may work to promote not respect, but derision, of the

24   law if the law is viewed as merely a means to dispense harsh punishment without taking into

25   account the real conduct and circumstances involved in sentencing'").[21]  Moreover, Mr. Reyes is

26   _____

27   [21] *See* Scott Herhold, S.J. MERCURY NEWS (Dec. 6, 2007) ("By the last count, more than 100 companies
     have been embroiled in the stock-options backdating scandal.  Only a handful of executives have been
     pursued in criminal court, though more than two dozen companies have been charged in civil actions by

28   federal regulators.  Do we really want to put all those CEOs and CFOs in jail?  . . . If you throw the book

1  not aware of a single indictment or prosecution for option backdating based on conduct

2  occurring after 2006.  The factor of general deterrence must be considered in light of the fact that

3  the stock option accounting rules are now clear following the abolishment of APB 25 and, likely

4  as a result, companies are no longer confused over their obligations under the accounting rules—

5  unlike they were from 2000 to 2004.

6  ### 3.    Specific Deterrence (18 U.S.C. § 3553(a)(2)(C))

7  Section 3553(a)(2)(c) directs a court to consider the need to protect the public from

8  further crimes of the defendant.  The aims of specific deterrence are not served by imprisoning

9  Mr. Reyes.  There is no likelihood of recidivism and he poses no threat to the public.  Indeed, his

10  charitable donations and willingness to assist others in need (often without being asked) show

11  that he is a far cry from being a risk to the public.

12  Mr. Reyes has spent his entire professional career working for technology companies,

13  going from a full time computer salesman during college, to a Vice President of Sales, to Chief

14  Executive Officer.  Prior to his conviction for securities fraud, Mr. Reyes had no criminal history

15  and an impeccable record.  He will never again work as an officer or executive at a public

16  company, and will have no opportunity to commit a crime even remotely like what he was

17  convicted of.[22]  Nor is there any reason to believe he would be inclined to break the law; the

18  offense conduct in this case is entirely anomalous, and Mr. Reyes is a man of high integrity who,

19  throughout his life, has tried to do the right thing.  In support of Mr. Reyes during his first

20  sentencing, hundreds of letters from friends, family and business associates were submitted on

21

22  at [Mr. Reyes], you will inevitably invite the accusation that justice is loaded." (filed as Ex. 4 to the Jan.

23  10, 2008 Declaration of Ronda J. McKaig; *see also id.* (further asking whether Brocade's failure to record expenses "was . . . so vastly different—in a sense that demands prison—from Brocade's footnoted competitors?").

24  [22] *See United States. v. Emmenegger*, 329 F. Supp. 2d 416, 428 (S.D.N.Y. 2004) ("Fair consideration of

25  [section 3553(a)(2)(C)] indicates that there is less need for incarceration to protect the public from future crimes committed by this [securities and wire fraud] defendant than is typical in cases of theft.  This

26  conclusion is not based merely on [defendant's] status as a first offender, which the Guidelines take into account, or on a prediction of his future good behavior.  Unlike defendants whose crimes require no

27  special skill or position, [defendant, a registered securities broker-dealer,] yielded to a temptation and committed a crime particularly adapted to his chosen career. That career is over, and his potential to

28  commit this particular type of crime has been eliminated.").

Cooley LLP
Attorneys At Law
Palo Alto

31.

Defendant Gregory L. Reyes's
Principal Sentencing Memorandum
CR06-00556 CRB

his behalf.  (*See* Appendices A, B & C attached to the 11/16/07 Declaration of Ronda McKaig.)  In addition, the letters submitted with this memorandum show that Mr. Reyes has maintained his integrity and generous spirit in the recent years.[23]  (*See generally*, Letters attached as Ex. A–P to Stephens Decl.)  He is simply not a man that needs a lengthy prison sentence to deter him from committing a future crime.

Moreover, Mr. Reyes faces substantial financial consequences in addition to the term of imprisonment and any probationary period imposed.  Beyond his complete loss of income from his former position as CEO and director of Brocade, the SEC enforcement action against Mr. Reyes is still pending.  He also paid $12.5 million to settle derivative litigations relating to options, and as a condition of that settlement, agreed to pay all legal fees incurred after May 2, 2009, out of his personal assets.  (*See* Agreement between Brocade and Gregory L. Reyes dated Apr. 14, 2009 ("Brocade Derivative Settlement Agreement"), at ¶ 2, pgs. 3–4 (filed in this case as Dkt. No. 941, at 15–16).)  These significant financial consequences already incurred by Mr. Reyes more than adequately serve the goal of deterrence.

### C.  The Kinds of Sentences Available (18 U.S.C. § 3553(a)(3))

Under section 3553(a), the Court must consider the "kinds of sentences available," including non-custodial sentences.  Among these options are community confinement (U.S.S.G. § 5Fl.l), home detention (*id.* § 5F1.2), community service (*id.* § 5F1.3), and occupational restrictions (*id.* § 5F1.5).  Mr. Reyes recognizes that co-defendant Stephanie Jensen received a

---

[23] As a few examples of Mr. Reyes's charitable donations, he donated approximately $273,000 to pay the tuition of children from families facing economic hardship so they could continue to attend Valley Christian Schools.  He also donated $200,000 to Valley Christian to encourage the use of technology paradigms to increase student learning.  (Letters from Clifford E. Daugherty and Werner G. Vavken, attached as Exs. I & J, respectively, to Stephens Decl.)  Mr. Reyes also recently donated $10,000 to the Jewish Family Service of Greater Harrisburg (PA).  (Letter from Julie Sherman, attached as Ex. F to Stephens Decl.)  Having initially been brushed off by Ms. Sherman as someone unlikely to contribute to a small organization over 3,000 miles away from his home, Mr. Reyes pressed on with the JFS and donated 20% of the entire amount that it had hoped to fundraise.  This donation (which he requested be anonymous) not only served as a confidence builder for Ms. Sherman and the JFS's future fundraising efforts, but it helped provide social services to the young, elderly, families, and children with special needs throughout the greater Harrisburg community.  (*Id.*)  Mr. Reyes's charitable acts have also touched others on a very personal level; for example, he recently paid the funeral expenses for a friend's mother-in-law, initially without his friend's knowledge. (*See* Letter from William Gutekunst, attached as Ex. E to Stephens Decl.)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

DEFENDANT GREGORY L. REYES'S
PRINCIPAL SENTENCING MEMORANDUM
CR06-00556 CRB

1   sentence including a 2-month term of imprisonment, and does not suggest that a lesser term of

2   imprisonment is mandated here.  However, in light of his criminal history and the nature of the

3   offense—and in the event the Court imposes enhancements resulting in an AOL below

4   Zone D—Mr. Reyes requests that the Court consider the full range of sentencing options,

5   including a non-custodial sentence.  *See* 28 U.S.C. § 994(j) (noting "general appropriateness of

6   imposing a sentence *other than imprisonment* in cases in which the defendant is a *first [time]*

7   *offender* who has not been convicted of a crime of violence or an otherwise serious offense")

8   (emphasis added).

9       **D.    The Need to Avoid Unwarranted Sentence Disparities (18 U.S.C.
            § 3553(a)(6))**

10

11          In criminal prosecutions for backdating, no defendant has received over 24 months

12   imprisonment—even where an 18-level loss enhancement had been imposed.[24]  Here, the

13   government alleged there was a personal motive, but it alleged a $1.2 million "benefit" on a

14   grant that was not within the indictment period, was clearly "not on trial" as interpreted by this

15   Court, and should have been considered only for "motive," if at all.  In short, this is not the case

16   of widespread fraud where defendants tried to personally enrich themselves—*e.g.*, Enron,

17   WorldCom, Adelphia, Madoff.  Yet the government has sought, both in the first sentencing and

18   today, to impose upon Mr. Reyes a punishment fit for those far more severe crimes.

19          Mr. Reyes also notes that co-defendant Stephanie Jensen, upon resentencing after

20   remand, received a sentence of two-months imprisonment.  This sentence resulted from the

21   Court's reconsideration of what it previously stated would have been Ms. Jensen's sentence if

---

[24] *United States v. Treacy*, No. 08-CR-366, (Dkt. No. 130) (S.D.N.Y. Sept. 2, 2009) (sentencing former President and COO of Monster Worldwide, Inc., to 24 months imprisonment with two years of supervised release, after calculating appropriate guideline range of 121–151 months); NEW YORK LAW JOURNAL, *Non-Guideline Sentences For White-Collar Defendants*, Vol. 242 – No. 73 (Oct. 14, 2009);*United States v. Gerhardt*, No. 07CR00175, (Dkt. Nos. 285 & 294) (E.D. Mo. Oct. 17 & 23, 2008) (sentencing former-CFO of Engineered Support Systems, Inc., to 15 months imprisonment with two years of supervised release); *United States v. Argo*, No. 07-CR-00683, (Dkt. No. 16) (S.D.N.Y. Jan. 29, 2008) (sentencing former-CFO of SafeNet, to six months imprisonment with three years of supervised release); *United States v. Sorin*, No. 06CR00723, (Dkt. No. 50) (E.D.N.Y. Oct. 20, 2009) (sentencing former-GC of Comverse Technology, Inc., to one year and one day imprisonment and three years of supervised release).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

33.

DEFENDANT GREGORY L. REYES'S
PRINCIPAL SENTENCING MEMORANDUM
CR06-00556 CRB

1   not for the obstruction enhancement—*i.e.*, four months.[25]  And while the Court noted that Ms.

2   Jensen was in a different guideline range following the Ninth Circuit's remand, it nonetheless

3   departed further from four months, which was already in the middle of the appropriate guideline

4   range, and imposed a lesser sentence of two months.  (*See* Jensen RT (Jan. 6 , 2010) at 11:12–16

5   ("But the question now becomes should I continue with the thought that Miss Jensen should

6   serve four months, and it's my view that that ought to have some modification in it.  So that's

7   how I feel at the present time."); *id.* at 14:23–15:4 (two-month sentence with no supervised

8   release).)

9          Mr. Reyes respectfully urges the Court to consider a similar departure for his own

10  sentence.  As Ms. Jensen's counsel noted, "the so-called scandal of options backdating" has

11  subsided or "fizzled" (*id.* at 5:10–12), which is particularly relevant, in light of changed

12  accounting rules, to the factor of general deterrence.  Moreover, Mr. Reyes asks that the Court

13  consider his acquittal on the conspiracy charge and the Ninth Circuit's recognition that

14  Brocade's senior finance officers knew of the company's backdating practices—none of whom

15  have faced criminal prosecutions.  The offense conduct now before the Court is of a different

16  nature than before, in that the jury did not find that Mr. Reyes orchestrated a criminal

17  conspiracy.  He was not criminal partners with Ms. Jensen, and, by the government's own

18  theory, he did not conspire with anyone else at Brocade.  In light of these facts, Mr. Reyes asks

19  the Court to consider the disparity between a two-month sentence for Ms. Jensen and a sentence

20  approximately ten times that amount for Mr. Reyes.

21      **E.      The Need to Provide Restitution (18 U.S.C. § 3553(a)(7))**

22          As discussed below and in Mr. Reyes's opposition to the government's brief seeking

23  restitution (*see* Loss Response at 25–26), there is no need for restitution in this case.

24

25  [25] The Court stated in Ms. Jensen's first sentencing that "[i]n the event that the Court of Appeals sets
26  aside the obstruction of justice [enhancement], . . . it would have been the Court's intention simply to
    impose the four month period of imprisonment, but not the supervised release and not the three months in
27  a . . . residential reentry center."  (*See United States v. Jensen*, Defendant Stephanie Jensen's
    Supplemental Sentencing Memorandum, Dkt. No. 921, at 3:18–26, citing Jensen RT (Jan. 6, 2010)
28  at 17:8–19.)

1

**VIII.   RESTITUTION IS NOT WARRANTED IN THIS CASE, AND ANY CRIMINAL FINE SHOULD BE REDUCED FROM THE $15 MILLION IMPOSED IN THE FIRST SENTENCING.**

2

3

**A.   There Is No New Evidence To Justify a Departure from the Court's Prior Conclusion that an Award of Restitution Is Inappropriate.**

4        There is no dispute that Mr. Reyes's acquittal on the conspiracy charge renders an award

5   of restitution inapplicable under the Mandatory Victim Restitution Act of 1996, 18 U.S.C.

6   § 3663A, because there was no conviction on a Title 18 offense.  Even the government, in its

7   Loss Memorandum, could only argue that restitution was permissible as an condition of

8   supervised release.  (*See* Loss Memorandum at 5–6 (arguing for $37.1 million in restitution).)

9   The Court previously stated, during Mr. Reyes's first sentencing, that restitution "will be the

10  subject of a civil action," referring then to the government's argument that Brocade was a

11  "victim" of Mr. Reyes's conduct.  (RT (Jan. 16, 2008) at 14:19–21.)  As the Court is aware, Mr.

12  Reyes has since paid $12.5 million to Brocade to resolve the derivative lawsuit.

13       The Court's reasoning is no less applicable now, where the government has not presented

14  any reasonable or reliable method of identifying any victims that have suffered actual loss

15  resulting from the offense conduct.  *See* U.S.S.G. § 2B1.1, App. Note 1 (Guidelines restrict

16  definition of "victim" to "any person who sustained any part of *the actual loss*") (emphasis

17  added); (*see also* Loss Response at 25–26).  The government still has not overcome the Court's

18  previous finding that there is no evidence of victims who sustained actual loss caused by the

19  offense conduct.  (*See* Order at 5:24–25.)  Without identifiable victims that suffered actual loss

20  (and without having adequately proposed a method of distribution), restitution is inappropriate

21  and unnecessary.

22

**B.   There Are Changed Circumstances Justifying a Reduction in the $15 Million Fine Previously Imposed.**

23

24       Unlike restitution, the purpose of a fine under the Guidelines is punishment.  *See*

25  U.S.S.G. § 5E1.2(d) ("The amount of the fine should always be sufficient to ensure that the fine,

26  taken together with other sanctions imposed, is punitive.")

27       As an initial matter, Mr. Reyes submits that the jury's not-guilty verdict on the Count 1

28  conspiracy charge in this trial, as opposed to the first trial, merits consideration as a basis to

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

35.

DEFENDANT GREGORY L. REYES'S
PRINCIPAL SENTENCING MEMORANDUM
CR06-00556 CRB

1    impose a decreased fine. Even more significant, as relates to the appropriateness of a fine, Mr.

2    Reyes, under the terms of his settlement with Brocade in the derivative action, has paid out of

3    pocket all legal fees incurred after May 2, 2009. (*See* Brocade Derivative Settlement

4    Agreement"), at ¶ 2, pgs. 3–4 (Dkt. No. 941, at 15–16).) Despite this substantial financial

5    hardship, Mr. Reyes also is prepared to pay, to the extent possible, any fine the Court imposes

6    out of his personal assets—as he did after the first sentencing, despite then having a contractual

7    right to indemnification from Brocade.

8            Mr. Reyes further submits that the fine recommended by the Probation Office of $15

9    million is unduly punitive. *See* U.S.S.G. § 5E1.2; 18 U.S.C. § 3572(a)(3) (in evaluating whether

10    to impose fine and amount of fine, Court must take into account "any pecuniary loss inflicted

11    upon others as a result of the offense"); *id.* § 3572(a)(5) (same, noting requirement that Court

12    consider "need to deprive the defendant of illegally obtained gains from the offense."). The

13    Court properly found in the first sentencing that there was no reasonable means of identifying

14    finding "actual harm," and Mr. Reyes submits that the government has failed to make the same

15    showing—as well as a showing of "gain"—in this sentencing. This too demonstrates the need

16    for a less severe fine.

17            Finally, the Probation Office's recommended fine, in light of other backdating

18    prosecutions, is extremely disproportionate to what other executives have paid for backdating

19    offenses. To Mr. Reyes's knowledge, no backdating defendant has paid anything near $15

20    million in a criminal fine. The former CEO of Take-Two was ordered by pay a combined total

21    of $7.3 million to the district attorney's office and the SEC in lieu of all fines and disgorgement.

22    (*See* Ex. 8 to the Jan. 10, 2008 Declaration of Ronda J. McKaig.) Further, the former President

23    and COO of Monster Worldwide, who received the longest prison sentence for option

24    backdating of which Mr. Reyes is aware, was not ordered to pay any criminal fine. *United*

25    *States v. Treacy*, No. 08-CR-366, (Dkt. No. 130) (S.D.N.Y. Sept. 2, 2009). In that case, the

26    court determined no criminal fine was necessary as punishment even though an 18-level

27    enhancement had been imposed for loss. In short, the Probation Office has already

28    recommended a sentence of imprisonment that is lengthy by comparison to other backdating

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

36.

DEFENDANT GREGORY L. REYES'S
PRINCIPAL SENTENCING MEMORANDUM
CR06-00556 CRB

1   defendants (*see supra*, sections VII.A.1 & VII.B.1) and thus more-than-adequately reflects the

2   seriousness of the offense, promotes respect for the law, and provides just punishment.  (*See*

3   U.S.S.G. § 5E1.2(d)(1).)  Such a substantial fine is not necessary to further punish Mr. Reyes.

4   **IX.   CONCLUSION**

5         For the reasons set forth above, Mr. Reyes respectfully requests that the Court grant a

6   significant downward variance from the Guideline range, impose the minimum possible term of

7   supervised release, make no order of restitution, and substantially reduce the $15 million fine

8   imposed in 2008.[26]

9   Dated:     June 14, 2010                    COOLEY LLP

10

11                                                _____
                                                        */s/*
12                                                STEPHEN C. NEAL

13                                                Attorneys For Defendant
                                                 GREGORY L. REYES

14  863393/HN

15

16

17

18

19

20

21

22

23

24  [26] Mr. Reyes originally lodged this memorandum with the Court (and served it on counsel for the
    United States) on Monday, June 14, 2010, pending his administrative motion to file under seal
25  this memorandum as well as the Declaration of Neal J. Stephens and exhibits in support thereof.
    (*See* Dkt. No. 1195.)  In accordance with the Court's denial of the motion to seal (*see* Dkt.
26  No. 1200), Mr. Reyes has filed this memorandum publicly via the Court's ECF system.  Mr.
    Reyes has separately filed a renewed motion to seal certain highly personal and confidential
27  letters, submitted as Exhibits P, Q, R, S, and T to the Declaration of Neal J. Stephens in support
    of this memorandum.
28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

37.

DEFENDANT GREGORY L. REYES'S
PRINCIPAL SENTENCING MEMORANDUM
CR06-00556 CRB